Terry Glenn MILLER, Appellant,

v.

STATE of Alaska, Appellee.

No. 986.

Supreme Court of Alaska.

Dec. 15, 1969.

Denis R. Lazarus, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., Keith E. Brown, Asst. Dist. Atty., Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY, and CONNOR, JJ.

## OPINION

CONNOR, Justice.

Appellant was convicted by a jury verdict of the crime of stabbing at another with intent to wound, in violation of AS 11.15.150. The one at whom the stabbing

was directed was Trooper Russell Anderson of the Alaska State Police, who was attempting to effect an arrest of appellant at the time of the attempted stabbing.

The incident out of which the indictment resulted took place in the parking lot of a bowling alley in Soldotna, Alaska, shortly before midnight on March 18, 1967.

At about 11:30 that evening Trooper Anderson and a friend, Ed Meyer, left Anderson's home in Soldotna to remove a dead moose from the Sterling Highway. On the way, they happened to notice a car parked in the lot of a bowling alley which had closed for the night. Anderson decided to check it out; and as he drew near in his patrol car, the other car made a U-turn and proceeded to the back of the bowling alley building. Anderson activated the red light on his patrol car and the other car stopped.

Anderson then walked to the driver's side of the car and found Darlene Heatherton behind the wheel and the car's owner, Terry Glenn Miller, next to her. The trooper testified that he knew both of them, and that he knew they were both minors. When he asked Miss Heatherton for her driver's license, he noticed what appeared to be a case of Lucky Lager beer on the floor behind the driver's seat. Anderson told Heatherton and Miller to get out of the car and informed them that they were under arrest for being minors in possession of an alcoholic beverage. He then took possession of the case of beer, and he noticed at that time that several of the bottles of beer were empty.

Miss Heatherton got into the patrol vehicle, but appellant became argumentative. After a scuffle, appellant returned to his car. Anderson removed appellant forcibly from his car and managed to jostle him to the patrol car where he was planning to handcuff appellant. They slipped to the ground and appellant came up wielding a bayonet. Trooper Anderson testified that Miller slashed at him with the bayonet and that his clip-on necktie might have been knocked loose by the bayonet.

Because he was now wary of appellant and the bayonet, Trooper Anderson stepped backward, unsnapped his revolver and ordered appellant to drop his weapon. Thus the investigation of an automobile parked after hours near a bowling alley had mushroomed into a serious event.

While Trooper Anderson and appellant were standing off from each other, Anderson repeatedly told appellant to drop the weapon and appellant told Anderson to leave him alone. Miss Heatherton then went to appellant to try to convince him to submit to the officer. According to the testimony of Anderson, Miller was so upset that he threatened Miss Heatherton. Finally, the impasse ended when Miller and Miss Heatherton got into Miller's car, and a few moments later the bayonet was dropped out of the car window. About this time Trooper Provine of the Alaska State Police arrived in another patrol car. Anderson and Provine then were able to remove appellant from the car, advise him that he was under arrest for attempting to stab Anderson, and turn him over to custody of Corporal English, who had just come upon the scene.

Appellant specified a number of errors in the prosecution and trial of his case. Although twelve errors are specified, these are not correlated with the body of the argument in appellant's brief. Accordingly, we must deal with the claims of error as we are best able to discern them.

I

Appellant's first contentions can be grouped under the proposition that the indictment was defective because of irregularities in the constitution and administration of the grand jury. Appellant moved to dismiss the indictment on the grounds that the grand jury was extended beyond the five-month limitation prescribed by Rule 6 of the Rules of Criminal Procedure, that the foreman of the grand jury and one other grand juror were not qualified to sit as grand jurors because they had served beyond the five-month limitation,

that the witness before the grand jury that indicted appellant was never properly sworn because the foreman was not qualified to administer the oath to the witness, and that the endorsement of the indictment was defective because the foreman was not qualified to act.

The record is clear that the grand jury foreman served in the months of August and September of 1966, that he was excused from service in October, but again served in January and March of 1967. His actual service did not exceed four separate months. He acted as foreman in January and March of 1967. It is also plain that 15 members of the grand jury voted for the indictment against appellant. Under Criminal Rule 6(c) (2) the disqualification of one or two grand jurors would not invalidate the indictment. Crawford v. State, 408 P.2d 1002, 1011 (Alaska 1965).

We see no harm inflicted on appellant because the grand jury foreman served for a few months, was temporarily excused, and then resumed service a few months later. We find this to be in substantial compliance with the pertinent rule.[1]

A case similar to this one is People v. Whalen, 26 Misc.2d 714, 208 N.Y.S.2d 130 (1960). In that case an indictment returned by a grand jury containing two unqualified members was held to be valid. The court noted that a grand jury can act through a de facto foreman without violating any constitutional rights of the accused.

The role of the foreman was described by the court in People v. Whalen, supra, in the following terms:

"The foreman of the grand jury is appointed by the judge of the court which impaneled the grand jury. He occupies roughly the same position as the foreman of a petit jury. He has no greater or lesser powers than any other grand juror. Each paneled grand juror is a distinct legal entity and the identity of the foreman is merged along with the other jurors.

"The foreman is, in the absence of the courts, the presiding officer of the inquiry; he is merely the instrumentality through which the proceedings and actions of the grand jury are reported to the court, and the most important of his duties is to report all indictments which are returned by the grand jury and to endorse on such bills, as foreman, whether or not they are true bills." 208 N.Y.S. 2d, at 132.

Thus, even if the foreman was somehow not qualified, it would require a greater showing of prejudice to appellant before we would be willing to invalidate the indictment on the ground that the foreman was disqualified and that he had no power to administer oaths or sign indictments.

II

Appellant contests the validity of his arrest, made without a warrant, on the misdemeanor charge of being a minor in possession of an alcoholic beverage.

His claims of error are based upon the rejection by the trial court of appellant's exhibit B, offered to show that the misdemeanor charge against him had been dismissed, the denial of a motion for mistrial based upon the judge's statement in the presence of the jury that the only issue about the legality of the arrest was whether the officer had probable cause to believe that appellant had committed a misdemeanor in his presence, and that the court erred in instructing the jury on the legality of the arrest. Additionally, appellant claims that there was no probable cause to justify the arrest itself.

1. Crim.R. 6(l) provides: "Discharge and Excuse. A grand jury shall serve until discharged by the presiding superior court judge of the judicial district but no grand jury may serve more than 5 months, unless for good cause such period is extended. The tenure and powers of a grand jury are not affected by the beginning or expiration of a term of court. At any time for cause shown the presiding judge may excuse a juror either *temporarily* or permanently, and in the latter event said judge may impanel another person in place of the juror excused." (Emphasis supplied.)

■ The relevant arrest statute, AS 12.-25.030(1), authorizes a private citizen or a police officer, without a warrant, to make an arrest for a crime "committed or attempted in his presence." An arrest for a misdemeanor made by an officer without a warrant is valid if the offense is committed in his presence. Rubey v. City of Fairbanks, 456 P.2d 470, 474 (Alaska 1969); Herrin v. State, 449 P.2d 674, 677 (Alaska 1969); Drahosh v. State, 442 P.2d 44, 46 (Alaska 1968).

Appellant contends that "an officer who arrests without a warrant on a misdemeanor charge acts at his peril, since the arrest will be unlawful if the offense was actually not committed, even though the officer acted on reasonable grounds and in good faith." Under appellant's theory, Anderson's arrest of appellant on the misdemeanor charge without a warrant was lawful only if the prosecution proved that the offense was actually committed in Anderson's presence. We disagree.

In Rubey v. City of Fairbanks, supra, we held that an arrest for a misdemeanor committed in the presence of an officer was valid where what the officer observed was sufficiently indicative that an offense was in the course of commission as to lead to the logical conclusion that it was in progress. Support for that ruling was found in United States v. Viale, 312 F.2d 595 (2d Cir. 1963), in which the United States Court of Appeals applied the New York statute. The New York statute is similar to our own. In *Viale*, the court said:

"It is now clear under New York law that one person may without a warrant justifiably arrest another who commits a misdemeanor in his 'presence' only when the arrestor actually observed acts which were 'in themselves sufficiently indicative of a crime being in the course of commission * * *' [T]he arrestor must have perceived 'indications of the

commission of the offense sufficient to induce reasonable belief of the fact.'" (Citations and footnote omitted.) 312 F.2d, at 600.

In Coverstone v. Davies, 38 Cal.2d 315, 239 P.2d 876 (1952), the California Supreme Court construed the applicable statute, which was also similar to AS 12.25.-030(1), as allowing an officer to make a warrantless arrest for a misdemeanor where the officer had probable cause to believe the arrestee was committing the offense in his presence. The court held that the arrest is proper when circumstances exist that would cause a reasonable person to believe that a crime had been committed in his presence. The court explained the policy reasons underlying its interpretation:

"When an arrest for a misdemeanor is made upon the complaint of one other than the arresting officer, it is proper to require the securing of a warrant to justify the arrest. * * * However, to make the same requirement, when the officer sees that in all probability a public offense is being committed in his presence, would be to hamper law enforcement officers in their everyday enforcement of the law. Peace officers would be reluctant to make arrests for fear that they would be held liable for having made an honest and reasonable mistake. It is thus manifest that the day to day problems of law enforcement require that peace officers be allowed to act without fear of being held liable upon the facts as they see them, provided such facts would lead a reasonable person to conclude that he was witnessing the commission of a public offense by the person arrested." 239 P.2d, at 879–880.[2]

■ We find these authorities persuasive. We hold that an arrest under AS 12.25.030(1) is lawful where the peace officer has perceived facts which would lead a reasonable man to believe that the

2. The statute dealt with in Coverstone v. Davies, supra, was amended in 1957 to authorize warrantless arrests where the officer reasonably believes that an offense

is being committed or attempted in his presence. See California Penal Code, Sec. 836.

arrestee has committed or attempted to commit an offense in his presence. We further hold that appellant's arrest on the charge of being a minor in possession of an alcoholic beverage was lawful.[3] Anderson, an experienced police officer, properly set out to investigate a car parked adjacent to a closed business, late at night, and stopped it when it started to move away. He recognized both occupants and while questioning them saw a partially open case of beer on the floor behind the driver's seat. These facts reasonably indicated that the offense was being committed in his presence.

■ Lastly, we take up the question of whether one can resist a peaceful arrest even though the arrest is unlawful. The weight of authoritative precedent supports a right to repel an unlawful arrest with force. United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948); John Bad Elk v. United States, 177 U.S. 529, 537, 20 S.Ct. 729, 44 L.Ed. 874 (1900); United States v. Heliczer, 373 F.2d 241, 248 (2d Cir. 1967), cert. den. 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359; 1 Wharton, Criminal Law & Procedure, Sec. 216 (1957). This was the rule at common law. It was based upon the proposition that everyone should be privileged to use reasonable force to prevent an unlawful invasion of his physical integrity and personal liberty.

But certain imperfections in the functioning of the rule have brought about changes in some jurisdictions. A new principle of right conduct has been espoused. It is argued that if a peace officer is making an illegal arrest but is not using force, the remedy of the citizen should be that of suing the officer for false arrest, not resistance with force. The legality of a peaceful arrest may frequently be a close question. It is a question more properly determined by courts than by the partici-pants in what may be a highly emotional situation. Because officers will normally overcome resistance with necessary force, the danger of escalating violence between the officer and the arrestee is great. What begins as an illegal misdemeanor arrest may culminate in serious bodily harm or death.

The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined. Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all.

The common law rule was developed in a time when self-help was a more necessary remedy to resist intrusions upon one's freedom.

"[It] was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery. Further, conditions in English jails were then such that a prisoner had an excellent chance of dying of disease before trial." Warner, "The Uniform Arrest Act," 28 Va. L.Rev. 315 (1942).

Section 5 of the Uniform Arrest Act provides:

"If a person has reasonable ground to believe he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest."

That provision, or its equivalent, has been enacted as statutory law in California,

---

3. It is recognized, of course, that the grounds for arresting a person without a warrant for a misdemeanor committed in the presence of an officer are considerably more restricted than those which would constitute probable cause for a felony arrest without a warrant. By our opinion today we do not mean to imply any change in the rules concerning felony arrests.

Rhode Island, New Hampshire, and Delaware. The Model Penal Code, Section 3.04(2) (a) (i) similarly prohibits the use of force "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." In support of this provision Judge Learned Hand stated:

"The idea that you may resist peaceful arrest * * * because you are in debate about whether it is lawful or not, instead of going to the authorities which can determine, * * * [is] not a blow for liberty but on the contrary, a blow for attempted anarchy." 1958 Proceedings, American Law Institute, at 254.

At least one state court has adopted the recommended rule as a matter of its common law development. State v. Koonce, 89 N.J.Super. 169, 214 A.2d 428 (1965). The legal literature contains discussions on how much force may be used by either an officer making a lawful arrest or by an unlawfully arrested person in resisting arrest. "Justification for the Use of Force in the Criminal Law," 13 Stan.L.Rev. 566 (1961); "Criminal Law: Force That May be Used to Resist an Illegal Arrest," 9 Okl.L.Rev. 60 (1956). At best only elastic standards can be employed, as so much depends upon the exigencies of the situation, the gravity of the offense, and the amount of force and counterforce used or threatened.

To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an ar-

rest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of life today. We hold that a private citizen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion.[4]

Under this standard appellant was given the benefit of instructions to the jury more favorable than that to which he was entitled, as the case was submitted on the theory that one has a right to resist with force an unlawful arrest. We reject the claims of error both for the reason that the arrest was proper and because appellant in any event had no right to resist a peaceable arrest.

### III

Appellant asserts that the trial court erred in unduly assisting the prosecution, particularly in advising the prosecutor, after he had rested his case, that the proof was not sufficient to withstand a motion for a judgment of acquittal and that he should request leave to reopen his case in order to cure evidentiary deficiencies which had been noted by the court.

The record is somewhat unclear as to what occurred, as there was a conference between court and counsel held at the bench but not on the record.

It appears that at the close of the cross-examination of Trooper English the state's attorney advised the court that the state had no further witnesses but would like to read into evidence several pertinent statutes. A brief conference at the bench, off the record, then ensued, during which appellant claims that the court advised the state's attorney that his evidence was insufficient in proving appellant's age. It appears that the state then continued exam-

---

4. It should be noted that the rule we formulate today has no application when the arrestee apprehends bodily injury, or when an unlawful arrest is attempted by one not known to be a peace officer. Quite different problems are then presented.

ining English, who was on the witness stand, thereafter recalled Trooper Anderson, and called a custodian of vital statistics records to establish that Anderson reasonably believed that appellant was a minor at the time of the arrest.

Whether this can be characterized as a reopening of the prosecution's case is not clear from the record. The defendant's case had not yet commenced. But in any event, we do not find in this case that the court abused its discretion in allowing the state to call the additional witnesses.

> "The trial court has a large discretion with respect to order of proof in permitting a party to reopen after it has rested. * * * There is no suggestion that this surprised the appellant, or that any further preparation was necessary to meet this testimony." Massey v. United States, 358 F.2d 782, 786 (10th Cir. 1966).

In the case just quoted the trial court had twice permitted the government to reopen its case and to introduce testimony to identify a stolen automobile, after the government had clearly rested. In the case before us we are unable to find that appellant was prejudiced by the trial court's action.

We cannot pass upon appellant's claim that the court improperly aided the state by advising it of the evidentiary deficiency because there is nothing in the record to substantiate such a claim. Appellant, in his brief, states that an objection was made, but a review of the record reveals no such objection. If one was made off the record, appellant's trial counsel should have seen to it that an additional objection was registered for the record.

## IV

■ In support of the proposition that there was probable cause for the arrest, the state attempted to introduce the birth certificate of appellant, which indicated appellant was under twenty-one at the time of the arrest. As foundation for the introduction of the document, the state produced Mrs. Louise Hoffer. Mrs. Hoffer testified that she was the Vital Statistics Clerk in Anchorage, that she was the custodian of the birth certificate which she had been required by subpoena to bring to court. The certificate was admitted, although appellant objected on various grounds.[5]

Appellant testified that at the time of the trial he was twenty years of age. Because of this testimony the introduction of the birth certificate, if it were error, could not have amounted to harmful error under Love v. State, 457 P.2d 622 (Alaska 1969). The effect of this birth certificate was completely cumulative, insofar as appellant's actual age was a relevant issue at all. For these reasons we will not give further consideration to this point.

## V

■ The trial court permitted Trooper Anderson, over appellant's objection, to testify that on an occasion previous to the evening of the arrest he had seen appellant's driver's license and had observed the birth date stated on it. This evidence was offered for the purpose of establishing that Trooper Anderson had probable cause to arrest appellant for the misdemeanor of being a minor in possession of alcoholic beverages.

Appellant objected to this testimony on the ground that it violated the hearsay rule. It appears to us that for the purposes for which this testimony was offered the hearsay rule never came into play. We view this testimony as falling under the doctrine which permits statements by a third party declarant when they are offered to show the state of mind of the

---

5. The document in court was a carbon copy of an original which is kept in Juneau. Appellant in effect claimed this carbon copy should not be considered a duplicate original but simply an uncertified copy of an original. He further claimed he was not served in advance with a copy of the document and that it was introduced contrary to "the statutes and regulations."

one who hears the statement. C. McCormick, Evidence § 228 (1954). This testimony was clearly admissible to show that Trooper Anderson possessed such knowledge as would reasonably lead him to believe that the offense was being committed in his presence. Once again, we are unable to find any error committed by the trial court.

## VI

Appellant makes a number of claims of error· which we have examined and find to be of little merit. In many instances appellant sets forth a scant discussion of the legal reasoning of the authorities on which the claim of error is based. We have, nevertheless, examined these points to be certain that plain error was not committed which might affect the integrity of appellant's conviction.

■ The claim is made that during the cross-examination of the witness Meyer, who had accompanied Trooper Anderson on the night in question, he was asked whether he recalled using in his report to the police some words to the effect that appellant had stabbed or threatened Anderson with the bayonet. His first answer was that he did not recall any such words. On redirect examination, after refreshing his recollection with the written statement he had made the morning after the arrest, Meyer answered that he did use such words in his report to the police. On recross-examination, defense counsel attempted to question Meyer about another portion of his written statement, but the court sustained the appellee's objection on the ground that the question was outside the scope of the redirect examination.

Finally the state offered to put the whole statement in evidence. Appellant's counsel then moved for a mistrial, which was denied. In his brief, appellant claims that the state knew that the entire statement would be hearsay and inadmissible and that its offer to place the statement in evidence was in itself enough to require the granting of a mistrial. We find, as did the trial court, that appellant himself was responsible for the state's offer because he had gone beyond the scope of redirect examination, thus causing the question of what was in the statement to be left unanswered. We conclude that the denial of the motion for mistrial was proper.

■ During the direct examination of Trooper Anderson, in answering a question in a somewhat narrative form, he volunteered the statement that he had had contacts with appellant on occasions previous to the evening in question and that he, therefore, was able to perceive that appellant was "under the influence," presumably of alcohol. The prosecutor stopped the witness at this point. Appellant's counsel then moved for a mistrial. Appellant argues that such evidence was irrelevant and prejudicial and that a mistrial should have been granted. The state argues that the statement was not prejudicial because the officer was stopped before his statement was completed, and it is pointed out that no request was made by appellant to strike the testimony or to have the jury instructed to disregard it.

Not every volunteered statement becomes a ground for mistrial. In the particular circumstances of this case we are unable to conclude that the statement objected to required the granting of a mistrial, particularly in view of appellant's failure to seek other remedies to cure any harm which might have been done by the words uttered by the witness.

■ Trooper Anderson testified that a few months prior to the arrest he had seen appellant's driver's license in the course of investigating a gun accident in which appellant had shot himself and that he knew appellant was a minor at the time of the arrest. On cross-examination Anderson said he had made notes at the time he saw the driver's license. Appellant's counsel moved for a production of Trooper Anderson's notes under AS 12.-

45.060.[6] Trooper Anderson said that he did not know where his notes were, and the prosecutor said that the state had no idea where they might be. Appellant moved to strike the testimony of Trooper Anderson or in the alternative to declare a mistrial under AS 12.45.080.[7] The denial of this motion is claimed as error.

Anderson's notes of appellant's age made in the course of an investigation not related to the present criminal charge are not a "statement" or "report" for purposes of AS 12.45.060 and .070. The trial court properly denied appellant's motion to invoke the sanction under AS 12.45.080.[8]

■ The court instructed the jury to the effect that it was a misdemeanor for a minor to possess or control alcoholic beverages. Alaska Administrative Code, Title 15, Ch. 4, § 4073. Appellant claims that the instruction was not complete and should have included the language of AS 04.15.080(b), which defines the crime of giving liquor to minors as not including a parent as to his own child. This latter offense had no relevancy to the case at bar. It may have been appellant's theory that he could be in lawful control of alcoholic beverages because they had been placed in his control by his parent. But appellant was not on trial for possessing alcoholic beverages. The mere existence of a possible defense of this kind would not negate the probable cause for arrest as perceived by Trooper Anderson. We find no error.

■ Appellant requested an instruction which would have told the jury that intoxicating liquor is defined by AS 04.20.010 as containing more than one per cent alcohol by volume, and that an instruction should have been given to the effect that a beverage cannot be determined to be alcoholic in content by sight alone. In response, the state argues that the instruction given was a proper statement of the law on the question of whether the officer had probable cause to believe that appellant was in the unlawful possession of an alcoholic beverage. We agree. The instructions contended for by appellant would only have confused the issue to be determined by the jury.

■ The indictment charged that appellant attempted to stab Trooper Anderson. The statute under which the indictment was brought, AS 11.15.150, uses the term "stab at another" in defining the offense. The verdict found the appellant guilty of attempting to stab with the intent

6. AS 12.45.050 "In a criminal prosecution, no statement or report in the possession of the state which was made by a prosecution witness or prospective prosecution witness (other than the defendant) to an agent of the state may be the subject of subpoena, discovery, or inspection until the witness has testified on direct examination in the trial of the case."

AS 12.45.060 "After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state which relates to the subject matter as to which the witness has testified. If the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

7. AS 12.45.080 "If the state elects not to comply with an order of the court to de-

liver to the defendant a statement or a portion of a statement as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion determines that the interests of justice require that a mistrial be declared."

8. We do not view our ruling as relaxing in any way the requirements of Mahle v. State, 371 P.2d 21 (Alaska 1962), that certain reports and materials must be made available to the defendant. Here we are dealing with notes that have to do with a case other than the one being tried. These were not notes as to which the prosecutor or the witness would have reasonably anticipated a requirement of production at trial, nor would there have been any reason for them to anticipate that they should search for these notes before trial so as to have them available for inspection.

to wound, but did not include the words "at another." . The appellant claims that this is a material variance and the verdict should not have been accepted. No authority is cited in support of this contention. We do not think that extended discussion is in order. We are unable to find any error.

 Finally, we find that appellant's contention that in sentencing appellant the court improperly relied upon mere contacts with the police not resulting in convictions is not supported by the record. We find no error.

The judgment of conviction is affirmed.

NESBITT, C. J., not participating.