Joseph P. HOWES and Lois M. Kalban,
Appellants,

v.

STATE of Alaska, Appellee.

No. 1443.

Supreme Court of Alaska.

Dec. 6, 1972.

---

10.   Breese v. Smith, 501 P.2d 159, 169 (Alaska 1972).

Herbert D. Soll, Public Defender, Lawrence J. Kulik and R. Collin Middleton,

Asst. Public Defenders, Anchorage, for appellants.

John E. Havelock, Atty. Gen., Juneau, Harold M. Brown, Dist. Atty., Ketchikan, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, and BOOCHEVER, JJ.

RABINOWITZ, Chief Justice.

Appellants Joseph P. Howes and Lois M. Kalban were charged with possession and control of "a hallucinogenic, depressant or stimulant drug, to wit: Hashish," in violation of AS 17.12.010. After trial to the district court without jury, Howes and Kalban were found guilty.[1] On appeal to the superior court, their convictions were affirmed.

The events leading to the arrest of Howes and Kalban began September 8, 1970, when United States Customs officers invited Sergeant Edwardson of the Ketchikan police department to join them in examining a package. The package was addressed to a person who had been sharing his post office box with Howes. When Edwardson arrived, the package had already been opened. In it was a large, round, squat black candle which, when Edwardson first saw it, had the bottom scraped out revealing some material imbedded therein. One of the customs agents took a sample of the material and field tested it before giving the sample to Edwardson, who later forwarded it to Anchorage with other evidence for testing. The field test indicated the presence of cannabis. The officers remolded the candle with the material and an accompanying note[2] in its base and repackaged it. The

---

1. A third defendant appealed from his conviction on the same charge on grounds of insufficiency of the evidence. His conviction was reversed in Egner v. State, 495 P.2d 1272 (Alaska 1972).

   Howes was sentenced to jail for 180 days with 98 days of this period of incarceration suspended on condition of good behaviour. Kalban received a 90-

day jail term with 55 days suspended on condition of good behaviour.

2. The note apparently read: "Happy Days, sorry about the delay, here come some deluxe dope, hope you get it, . . acknowledge receipt, so don't get paranoid about the narcs. Good smoking."

package was then put in the Customs Bureau's safe.

Edwardson proceeded to organize the efforts to apprehend the intended recipient of the package. Just before 5 p.m. on the 10th, he gave the postmistress a notice card to place in the addressee's box. That evening he held a general officer's meeting, at which the plans for the next day's joint surveillance by the city police, the state police, and the customs agents were explained.

At 9 a. m. on the 11th, Officer Leighton took up his station at Knutson Cove, some 15 miles from Ketchikan, where Howes and Kalban resided. His assignment was to watch a tan Volkswagen fastback[3] and a certain path at the Cove, looking in particular for a package he had been told contained hashish. From his stake-out, Leighton observed Howes and Kalban leave in the tan fastback about 10:35 a. m. They were next sighted by Sergeant Swope outside the Ketchikan post office at 11:20 a. m.

Earlier that morning Sergeant Edwardson and Officer MacIntosh had taken the package from the Customs Bureau's safe to the post office. MacIntosh stayed at the post office to see who picked up the package. After Howes and Kalban had picked up the package, MacIntosh followed them out of the post office and up the street to a bank. From there Officer Swope had them in sight intermittently as they did some errands in town. At one point Swope lost the subjects for at least 30 minutes. In general, the surveillance was somewhat disjointed and interrupted because of difficulty in maintaining radio contact. On several occasions the police lost sight of their subjects. Finally, the Volkswagen fastback turned toward Knutson Cove, making one last stop at a veterinarian's office. The subjects were out of sight for a time there. At that time, Swope asked some state troopers to take over the tailing while he took a short cut to Knutson Cove, arriving there shortly before 2:10 p. m.

Meanwhile, Sergeant Edwardson had been waiting back in town for news that the subjects had arrived at the Cove. His intention was to obtain a search warrant as soon as he knew into which building they had carried the package.[4] The stake-out at the Cove reported the arrival of a vehicle containing two long-haired males and one female who proceeded toward a boat rather than a residence. Fearing loss of the evidence, Edwardson ordered they be stopped. Swope pulled up almost immediately after the officers at the Cove had apprehended the three. Only minutes behind him was the tan fastback. Officer Edwardson, thinking the late arrivals might become suspicious because of the presence of seven or more policemen in the parking lot, ordered his officers "to approach the people in the Volkswagen and stop them— [to] contact them . . . . "[5]

The police moved in on the fastback swiftly. Sergeant Swope testified that he identified himself as a policeman and asked permission to look into the car. Granted permission by the driver, he looked into the car, first through the side windows and then through the open door. Swope saw a package torn open in the back seat with something in it that appeared to be the candle he had been told was there and objects he assumed to be broken pieces of

---

3. This car was owned by defendant Egner (*see* note 1 *supra*) who was also the driver on the day of the arrests.

4. Edwardson did not get a search warrant for the vehicle because he expected the subjects to have reached home and unloaded the car before he could get the warrant; by the time he knew differently they had finished their errands and were headed out. He also wanted to pick up the subjects after they had opened the package and were more clearly in knowing possession.

5. Officer Edwardson admitted that at this point in time he was "about ready to climb a tree," and that although he did not know if it was professional, he instructed the officers at Knutson Cove to "take the people out of the Volkswagen."

wax. He then immediately advised the three occupants of the fastback that they were under arrest. Another officer advised them of their rights. In the ensuing search, Swope noticed some hashish-like material in an open candy bar wrapper in Kalban's open purse behind the driver's seat. He also picked up the package and its contents. Leighton searched Howes and discovered hashish-like material in his pants pocket.[6] No contraband was found on Egner, the driver of the vehicle.

On appeal Howes and Kalban assert that this warrantless search was incident to an unlawful arrest, and therefore the district court's denial of their motion to suppress was reversible error. Since the prosecution has not attempted to justify the search and seizures other than as incident to an arrest,[7] the central issue in this appeal appears to be whether the arrests of Howes and Kalban were lawful.[8]

Under AS 12.25.030 of Alaska's Code of Criminal Procedure, a private person or a peace officer is authorized to arrest without a warrant

(1) for a crime committed or attempted in his presence;

(2) when the person has committed a felony, although not in his presence;

(3) when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it.

At common law a police officer was authorized to arrest without a warrant anyone who had committed a misdemeanor in his presence amounting to a breach of the peace.[9] Over the years most states, including Alaska, dropped the breach-of-the-peace requirement, retaining the in-the-presence requirement.[10] Recently many states have eliminated the presence requirement from their arrest statutes by removing the felony-misdemeanor distinction and allowing a policeman to arrest when he has reasonable grounds to believe that the person is committing, or has committed an offense. Several states have retained the felony-misdemeanor distinction but allow an arrest without the element of presence if the officer has reasonable grounds for believing that a misdemeanor has been committed.[11]

The crimes with which Howes and Kalban were actually charged, and the charge realistically contemplated by Officer Edwardson, was solely possession, a misdemeanor. In order to constitute a valid arrest under AS 12.25.030(1), the crime of possessing hashish must have been committed in the presence of the arresting officers.[12] Two elements are involved in the term "presence": (1) The officer must observe acts which are indicative of the commission of an offense; (2) The officer must be aware that he is in fact seeing an offense being committed.[13]

We have previously recognized that the presence requirement of AS 12.25.030(1) may be met by the officer witnessing one segment of a continuing offense or of an offense that spans a considerable period of

6. No question has been raised in this appeal regarding the scope of these searches and seizures which were made incident to the warrantless arrests.

7. The state expressly disavowed any intention of justifying the search as by consent.

8. The trial judge recognized this as the threshold question in his denial of the motion to dismiss.
   I feel that the officers acted properly in this case and that the arrest was proper and as I say a continuing offense was being committed at the time that the arrest was made, and there

was evidence of this being done in the presence of the officer when he elected to place under arrest before he . . . enter[ed] or search[ed] the vehicle.

9. See Prosser v. Parsons, 245 S.C. 493, 141 S.E.2d 342, 345 (1965).

10. See Note, 26 Wash. & Lee L.Rev. 119 (1969).

11. Id. at 122.

12. See Miller v. State, 462 P.2d 421, 425 (Alaska 1969).

13. E. g., United States v. Viale, 312 F.2d 595, 600 (2d Cir. 1963).

time. In Rubey v. City of Fairbanks [14] the officer overheard a conversation between appellant and Potter where arrangements were made to meet for the purpose of prostitution. Later the officer entered the meeting place and observed that Potter was unclothed and appellant was partially unclothed. The officer also heard Potter inform appellant that she was "under arrest for prostitution." In regard to these circumstances, we said that what the officer "observed, considered in the light of his prior knowledge, was sufficiently indicative of the offense of assignation being in the course of commission," and held the warrantless arrest lawful. Subsequently, in Miller v. State, 462 P.2d 421 (Alaska 1969), we had occasion to again decide the lawfulness of a warrantless misdemeanor arrest. In the Miller case, we ruled that a warrantless misdemeanor arrest is lawful

where the peace officer has perceived facts which would lead a reasonable man to believe that the arrestee has committed or attempted to commit an offense in his presence. [15]

The charge in Miller was that of a minor in possession of alcoholic beverages. There the officer had noticed a case of beer in the back of a car occupied only by two persons he knew to be minors. In upholding the arrest in Miller, we relied in part upon Coverstone v. Davies, 38 Cal.2d 315, 239 P.2d 876 (1952), where the California Supreme Court, in construing a statute similar to AS 12.25.030(1), said:

It is thus manifest that the day to day problems of law enforcement require that peace officers be allowed to act without fear of being held liable upon the facts as they see them, provided such

facts would lead a reasonable person to conclude that he was witnessing the commission of a public offense by the person arrested.

■ We hold that under the Miller criteria the arrests of Howes and Kalban were authorized. The facts which were observed by Officer Swope, together with his prior knowledge of the physical characteristics of the package and its contents, we think were sufficient to lead a reasonable person to believe that Howes and Kalban had committed an offense in his presence. In reaching this conclusion, we necessarily hold by implication that an officer may rely on information and observations reported by other officers helping in the investigation to establish probable cause for his belief that the arrestee has committed, or attempted to commit, an offense in his presence. [16]

■ Prior to Officer Swope's arrests of Howes and Kalban, Sergeant Edwardson had described to him the appearance of the package in question, the nature of its contents, and the fact that hashish had been discovered concealed inside a wax candle in the package. At approximately 11 a. m. the morning of the arrests, Officer Swope was stationed in the main post office building in Ketchikan and observed Howes and Kalban enter the post office building. According to Swope, Howes at the time was carrying a pink postal package card. Swope then observed Howes leave the building carrying the package which had been previously described to him by Sergeant Edwardson. Officer Swope then tailed Howes and Kalban intermittently and subsequently went to Knutson Cove.

14. 456 P.2d 470, 474 (Alaska 1969).

15. Miller v. State, 462 P.2d 421, 425–426 (Alaska 1969).

16. Other jurisdictions have held that the presence requirement can be satisfied by the use of the "police team" rule. Robinson v. State, 4 Md.App. 515, 243 A.2d 879 (1968); Prosser v. Parsons, 245 S.C. 493, 141 S.E.2d 342 (1965). In the case at bar, we think it unnecessary to attempt to delineate the extent to which an officer may rely on information furnished by other officers in demonstrating the reasonableness of his belief. Nor do we decide whether an officer may lawfully arrest, without a warrant, for a misdemeanor not committed in his presence when the arresting officer possesses police team information pointing to the accused's commission of a misdemeanor.

As indicated previously, when the vehicle carrying Howes and Kalban arrived at Knutson Cove, Swope testified that upon getting to the occupants of the vehicle he immediately identified himself as a police officer and asked Egner, the driver, if he could look inside the vehicle. Swope stated he looked into the vehicle without getting into it and observed a box on the back seat which had been torn open. This box or package matched the description that Sergeant Edwardson had previously given him. Inside the box Swope saw several pieces of broken wax.[17] Upon observing the foregoing, Swope advised Howes and Kalban that they were under arrest.[18]

We hold that the particular facts of this case would lead a reasonable man, having seen Howes and Kalban pick up the package, and having later perceived the opened package and broken wax pieces therein on the back seat of a vehicle from which Howes and Kalban were exiting, together with his prior knowledge of the fact that hashish had been concealed inside a candle within the package, to believe that Howes and Kalban had committed an offense in his presence. We therefore conclude that the district court did not err in denying Howes' and Kalban's motion to suppress.

Affirmed.

17. The witness testified that it was a broken wax candle that he saw, stating that he made this statement with reference to his "former knowledge that there was a candle—a wax candle—inside the box."

18. Defendant Egner was also arrested at this time.