STATE of Alaska, Appellant,

v.

Charmaine ROARK, Appellee.

STATE of Alaska, Appellant,

v.

Donna L. LaBADIE, Appellee.

STATE of Alaska, Appellant,

v.

Rallo S. ELLIS, Appellee.

STATE of Alaska, Appellant,

v.

Danny Lee THOMPSON, Appellee.

STATE of Alaska, Appellant,

v.

Brooks E. JACKSON, Appellee.

STATE of Alaska, Appellant,

v.

Margaret A. RESSLER, Appellee.

STATE of Alaska, Appellant,

v.

Patricia BROWN, Appellee.

STATE of Alaska, Appellant,

v.

Arthur McHALE, Appellee.

STATE of Alaska, Appellant,

v.

Lawrence D. OLSON, Appellee.

No. A–704.

Court of Appeals of Alaska.

Sept. 6, 1985.

---

David Mannheimer, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

John B. Salemi, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

In this case, we are called upon to decide the validity of indictments issued by a grand jury when an appropriate oath was not administered to several of its members before those indictments were issued. We conclude that, under the circumstances of this case, individuals serving on the grand jury who had not taken the oath of office were nonetheless *de facto* members of the jury and that, therefore, their participation in the grand jury proceedings was not improper.

## FACTS

A grand jury was convened in Anchorage on May 31, 1984, and sat during the months of July, August and September. During this time, the jury returned a number of indictments, nine of which are directly involved in this appeal. Apparently be-

cause the presiding superior court judge in Anchorage was unavailable when the grand jury was first convened, the task of qualifying grand jurors was delegated to Superior Court Judge Karl Johnstone, who was not familiar with the procedure. Judge Johnstone first determined that all but one of the venirepersons present met the statutory qualifications for grand jurors;[1] the nonqualifying juror was excused. From the remaining group of venirepersons, thirty-six jurors were selected at random to form two eighteen-member grand jury panels. At this point the entire venire—including prospective jurors who were not among the thirty-six selected for the two panels but continued to be potential alternates—should have been given the oath prescribed by Criminal Rule 6(e).[2] Judge Johnstone, however, directed that the oath be administered only to the thirty-six individuals who had been selected to serve on the two panels. The potential alternates whose names had not been called did not receive the oath.

During grand jury sessions occurring over the following months, a number of the unsworn alternates were called upon to sit as members of the grand jury, replacing jurors who, for one reason or another, had been excused. On September 6, 1984, the district attorney's office in Anchorage discovered that the prescribed oath of office had not been administered to these alternate grand jury members. The district attorney's office subsequently filed with the superior court a motion for an *in camera* inspection of grand jury records, seeking permission to examine the "concurrence sheets" filed by the two grand jury panels in connection with indictments they had issued. Concurrence sheets are documents in which the grand jury is to record the number of jurors voting for and against indictment in individual cases. The sheets are routinely filed with the presiding judge of the superior court but cannot be made public except by order of the court. Alaska R.Crim.P. 6(g). By moving for examination of the concurrence sheets, the district attorney's office sought to ascertain whether, discounting the votes of unsworn alternates, the number of votes cast by sworn grand jurors was sufficient to support the indictments issued by the two panels.[3] The state's motion for an *in camera* inspection was granted by Superior Court Judge Ralph E. Moody.

When the grand jury's concurrence sheets were opened, however, it was discovered that one of the panels had not recorded the number of jurors voting for

---

1. Alaska Statute 9.20.010 provides:

   *Qualification of Jurors.* A person is qualified to act as a juror if the person is
   (1) A citizen of the United States;
   (2) A resident of the state;
   (3) At least eighteen years of age;
   (4) Of sound mind;
   (5) In possession of the person's natural faculties; and
   (6) Able to read or speak the English language.
   This statute is made applicable to grand jurors by AS 12.40.010.

2. Criminal Rule 6(e) provides:

   *Oath.* The following oath shall be administered by the clerk of the superior court to the person selected for grand jury:
   "You and each of you as members of this grand jury for the State of Alaska do solemnly swear that you will diligently inquire and true presentment make of all such matters as shall be given to you for consideration, or shall otherwise come to your knowledge in connection with your present services; that you will

   preserve the secrecy required by law as to all proceedings had before you; that you will present no one through envy, hatred or malice, or leave anyone unpresented through fear, affection, gain, reward, or hope thereof; but that you will present all things truly and impartially as they shall come to your knowledge according to the best of your understanding, so help you God."

3. The procedure contemplated by the district attorney's office follows the provisions of Criminal Rule 6(f)(2), which states:

   (2) *Motion to Dismiss.* A motion to dismiss the indictment may be based upon objection to the array or the lack of legal qualification of an individual juror, if not previously determined upon challenge. An indictment shall not be dismissed upon the ground that one or more members of the grand jury were not legally qualified if it appears from the record kept pursuant to section (j) of this rule that a majority of the total number of grand jurors, after deducting the number not legally qualified, concurred in finding the indictment.

and against indictment in individual cases. Rather, the panel foreman had simply marked "X" next to the preprinted words "a true bill" on the concurrence sheet in each of the cases in which an indictment was issued.

Upon discovery of this irregularity, the district attorney's office requested Judge Moody to extend the term of the grand jury panel, so that the panel could reconvene. The motion was granted, and the grand jury reconvened on October 8–10, 1984. During this special session, the grand jury, in an attempt to reconstruct its original votes, examined each of the forty-two cases in which it had issued indictments. The panel then filed with the superior court a special report, accompanied by sealed envelopes containing supplemental concurrence sheets for each case considered.

Subsequently, a number of individual defendants moved for dismissal, alleging that inclusion of unsworn jurors on the grand jury had tainted their indictments. The defendants further alleged that the grand jury's failure to submit properly completed concurrence sheets in the first instance precluded later attempts to reconstruct grand jury voting patterns in individual cases. Judge Moody, in several separate cases raising the same issue, granted the motions to dismiss.[4] After moving unsuccessfully for reconsideration, the state filed this appeal.

## ANALYSIS

On appeal, the state's primary argument is that the alternate grand jurors who did not receive the oath required under Criminal Rule 6(e) were *de facto* grand jurors and that, therefore, their participation in deliberations and voting could not invalidate any indictment issued by the grand jury.

The defendants respond, first, that the *de facto* grand juror issue is not properly before this court, since the state failed to present it in a timely manner to the superior court. Second, the defendants claim that the *de facto* grand juror doctrine is inapplicable in this situation.

■ We reject at the outset the defendants' claim that the *de facto* grand juror issue should not be considered by this court. Although the defendants are correct in pointing out that the argument was not raised by the state until it moved for reconsideration of Judge Moody's original dismissal order and that Judge Moody declined to consider the argument because it was untimely, the question presented is purely one of law and not of fact; this court's ability to review the issue on appeal is in no manner hampered by the trial court's failure to address it. In this case, the state's reliance on the *de facto* grand jury argument does not work an unfair surprise on the defendants, nor do we perceive any other prejudice that might result from consideration of the question. Under these circumstances we are not precluded from considering the state's argument on its merits.

The principal question to be resolved, then, is whether the alternate grand jurors who had not been sworn were, nevertheless, *de facto* grand jurors. Generally, a *de facto* officer is one who:

[h]as the reputation of being the officer he assumes to be, and yet is not a good officer in point of law. More particularly, a *de facto* officer is a person who is surrounded by the insignia of office and seems to act with authority or one who is exercising the duties of an officer under

---

**4.** From our examination of the record it appears that unsworn alternate grand jurors participated in cases involving only four of the nine defendants named in this appeal: Roark, Jackson, LaBadie, and Thompson. The record indicates that the oath was administered to previously unsworn alternate grand jurors in compliance with Criminal Rule 6(e), on September 7, 1984, shortly after the district attorney's office discovered that the oath had not originally been given. Defendants Roark, Jackson, LaBadie and Thompson were indicted before September 7. However, the indictments of defendants Ellis, Ressler, Brown, McHale, and Olson are all dated after September 7. Reversal of the superior court's dismissal would thus be required as to the latter group of defendants based exclusively on their lack of standing.

a color of title, right, or authority, or under color of an appointment or election.[5]

The *de facto* officer doctrine has traditionally been based on considerations of public policy and necessity: the doctrine serves to validate official acts "on grounds of public policy and prevention of a failure of public justice." *People v. Davis,* 86 Mich.App. 514, 272 N.W.2d 707, 710 (1979).

■ Courts have long relied on the *de facto* officer doctrine to uphold acts performed by public officials in connection with the operation of the judicial branch of government.[6] In particular, the doctrine has been applied to validate the acts of irregularly constituted grand juries and improperly appointed grand jurors. In an early New York case, for example, the New York Court of Appeals found a grand jury selected under a void statute to be a *de facto* grand jury. *People v. Petrea,* 92 N.Y. 128 (N.Y.1883). *Petrea* and the *de facto* grand jury doctrine has more recently been relied on by the New York courts to validate the actions of grand juries when individual grand jurors were improperly appointed. *People v. Colebut,* 86 Misc.2d 729, 383 N.Y.S.2d 985 (N.Y.Sup.Ct.1976),

applied the *de facto* grand juror doctrine where a grand jury foreman who had been discharged before voting and was technically disqualified. Similarly, in *People v. Whalen,* 26 Misc.2d 714, 208 N.Y.S.2d 130 (N.Y.Sup.Ct.1960), the court upheld the actions of a grand jury foreman who was not qualified to serve, finding that the foreman was a *de facto* grand juror.[7]

It is notable that *People v. Whalen* was specifically mentioned by the Alaska Supreme Court in *Miller v. State,* 462 P.2d 421 (Alaska 1969). In *Miller,* the defendant moved to dismiss an indictment on grounds that the grand jury had been extended beyond the five-month limitation prescribed by Criminal Rule 6, that the foreman and another grand juror were disqualified because they had served more than five months, that a witness sworn by the foreman was not properly sworn because the foreman was not qualified to administer the oath, and that the foreman's endorsement of the indictment was defective. Although rejecting Miller's arguments on other legal grounds, the Alaska Supreme Court discussed with approval the *de facto* grand juror concept as applied by

**5.** 67 C.J.S. *Officers* § 264 (1955) (footnotes omitted). *See also* 63A Am.Jur.2d *Public Officers and Employees* § 578–608 (1984).

**6.** *See, e.g., McDowell v. United States,* 159 U.S. 596, 601–02, 16 S.Ct. 111, 112–13, 40 L.Ed. 271, 273–74 (1895) (upholding the acts of irregularly appointed judges); *Hasselbring v. State,* 441 N.E.2d 514 (Ind.App.1982) (upholding the acts of a jury commissioner not qualified to serve in the county); *People v. Davis,* 86 Mich.App. 514, 272 N.W.2d 707 (Mich.App.1979) (upholding the acts of an illegally appointed special prosecutor). *Cf. Carty v. State,* 421 N.E.2d 1151 (Ind. App.1981) (upholding a conviction for battery on a police officer when battery was committed on an invalidly appointed deputy); *Spann v. State,* 440 So.2d 1224 (Ala.Crim.App.1983) (upholding an arrest by a police officer who had not completed training required for appointment).

**7.** The *de facto* officer doctrine has also been extensively applied to validate the acts of grand juries that continued working beyond their prescribed time. *See, e.g., People v. Heller,* 465 N.Y.S.2d 671 (N.Y.Crim.Term 1983); *Buchler v. District Court,* 158 Colo. 205, 405 P.2d 950 (Colo. 1965); *People v. Hall,* 157 N.E.2d 26 (Ill.1959);

*People v. Au Clair,* 344 N.Y.S.2d 749 (N.Y.Sup. Ct.1973). *See generally* Annot.. 75 A.L.R.2d 544 (1961). The federal cases are to the contrary, holding that the actions of a grand jury serving beyond its prescribed period cannot validly be extended and are void. *See, e.g., United States v. Macklin,* 523 F.2d 193, 195 (2nd Cir.1975); *United States v. McKay,* 45 F.Supp. 1007 (E.D. Mich.1942). However, under federal law, the grand jury's term is prescribed by statute; the federal cases have taken the view that courts have no authority to alter the specific statutory terms. Thus the issue is considered a jurisdictional one. *See, e.g., United States v. Fein,* 504 F.2d 1170, 1171 (2nd Cir.1974). By contrast, grand jury procedures in Alaska—including the requirement of an oath—are governed by rules of court rather than by statute. *See* Alaska R.Crim.P. 6. In this regard, Alaska Criminal Rule 53 provides:

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

the New York case of *People v. Whalen,* 208 N.Y.S. 130. After discussing *Whalen,* the Alaska court concluded:

> Thus, even if the foreman was found not qualified, it would require a greater showing of prejudice to appellant before we would be willing to invalidate the indictment on the ground that the foreman was disqualified and that he had no power to administer oaths or sign indictments.

*Miller v. State,* 462 P.2d at 424. Although the Alaska Supreme Court's discussion of the *de facto* grand juror doctrine in *Miller* may technically be dictum, we nevertheless find it to be significant and conclude that it foreshadows the correct result in the present case.

▪ The defendants argue, however, that the oath required by Criminal Rule 6(e) is an essential promise by the grand jurors to carry out an important duty, which should not be done away with under the *de facto* doctrine. We recognize that the taking of the oath must be regarded as more than a mere formality. Nothing we say here is to the contrary. Yet the *de facto* officer doctrine has not traditionally been restricted to cases involving purely technical or formalistic irregularities.[8] In-

deed, in at least two cases, courts have applied the *de facto* officer doctrine to uphold acts of public officials who did not receive proper oaths. *See Malone v. State,* 406 So.2d 1060 (Ala.App.1981) (deputy sheriff who had been given an oath orally but not in writing as required was found to be a *de facto* officer); *Huff v. Sauer,* 243 Minn. 425, 68 N.W.2d 252 (1955) (applying *de facto* officer doctrine to uphold actions of police civil service commissioners who had not taken the required oath). Accordingly, we reject the defendants' argument against extension of the *de facto* officer doctrine and hold that, in the present case, votes cast by alternate grand jurors who had not formally received an oath were valid, because the jurors were *de facto* members of the grand jury.[9]

▪ One subsidiary claim raised by the defendants requires brief attention at this juncture. The defendants maintain that the grand jury's failure to keep a contemporaneous record of the number of jurors voting for and against indictment in individual cases constitutes a separate violation, which merits dismissal.[10] Under the circumstances of this case, the defendants' argument must be rejected. The defend-

---

**8.** The following criteria are commonly regarded as prerequisites for application of the *de facto* officer doctrine: (1) that the office purportedly filled by the *de facto* officer actually exist; (2) that the *de facto* officer perform the duties of that office; and (3) that the *de facto* officer have some fair color of right to the office. *See, e.g.,* 67 C.J.S. *Officers* § 265. "Fair color of right" includes the situation of one who is "duly appointed or elected to an office but who is in law disqualified to act, such as one who has failed to take the oath required...." *Id.* §§ 269, 806–807.

**9.** We similarly reject the defendants' related argument that the *de facto* officer doctrine should not be applied in the present case because it was intended to protect innocent parties who have in fact relied to their detriment on the apparent officers' authority. The defendants' argument finds some precedent in Florida. *See Holloway v. State,* 342 So.2d 966 (Fla.1977); *Treasure, Inc. v. State Beverage Department,* 238 So.2d 580 (Fla.1970). However, an actual showing of detrimental reliance by innocent persons has not generally been viewed as a prerequisite of the *de facto* officer doctrine. We are particularly con-

cerned that in the context of grand jury proceedings the rigid application of a detrimental reliance limitation would prove to be unrealistic, since such a limitation effectively disregards the broader reliance that our society as a whole places on the orderly and effective disposition of criminal cases.

**10.** Criminal Rule 6(g) generally requires that the grand jury keep a case-by-case record of its votes. Rule 6(g) provides:

> *Foreman and Deputy Foreman.* The presiding judge shall appoint one of the jurors to be foreman and another to be deputy foreman. The foreman shall have power to administer oaths and affirmations and shall sign all indictments. He or another juror designated by him shall keep a record of the number of jurors concurring in the finding of every indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the presiding judge. During the absence of the foreman, the deputy foreman shall act as foreman.

ants have challenged the propriety of the grand jury's substantive decision to issue indictments solely on the ground that some members of the grand jury had not received the required oaths. The defendants have not alleged or shown that the grand jury's failure to keep a contemporaneous voting record might have resulted in any prejudice, except to the extent that it precluded an accurate determination of the number of sworn grand jurors who voted for an indictment in each case.

Since our holding that unsworn alternate jurors were *de facto* grand jury members obviates the need to determine the number of sworn jurors voting in individual cases, and since no other showing of potential prejudice has been made, we find that any error in the recording of grand jury votes does not warrant dismissal in these cases. In reaching this conclusion, we find the following language from Criminal Rule 7(c) to be particularly relevant:

> No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matter of form in the indictment, which does not tend to prejudice the substantial rights of the defendant.

The record in this case does not support a conclusion that the grand jury's failure to keep an accurate record of its votes resulted in prejudice to any substantial right of the defendants.

The orders of dismissal entered by the superior court are REVERSED.