# STATE v. RALPH DAVID CAPELLE.

172 N. W. (2d) 556.

November 21, 1969—No. 41935.

D. P. Mattson, County Attorney, for appellant.

Robert Dunlap, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal by the state from a pretrial order suppressing evidence of the results of a blood test made for the purpose of determining the alcoholic content of defendant's blood at the time of an accident resulting in the death of two people and the serious injury of two others. The appeal is taken pursuant to Minn. St. 632.11, enacted by the legislature in 1967, giving the state a limited right of appeal.[1]

---

[1] Minn. St. 632.11, subd. 1: "In criminal cases the state may appeal in the following instances:

"(1) From an order, the substantive effect of which is to dismiss an indictment, information or complaint.

The questions involved on this appeal are (1) whether Minn. St. 169.121 is applicable to a prosecution for criminal negligence, and (2) whether there was any consent given by defendant to the extraction of his blood.

1. For the purposes of this decision the facts may be briefly summarized. Defendant, while driving an automobile at about 12:40 a. m. on March 24, 1968, ran off the road and struck a bridge abutment, as a result of which two passengers were killed. Defendant was taken to the emergency room at St. Mary's Hospital in Rochester at about 1:47 a. m. He was badly injured. He had sustained fractures of the right thigh and left forearm, had multiple abrasions and bruises, and suffered considerable loss of blood.

A complaint charging defendant with criminal negligence was filed about 2 months after the accident. At a pretrial hearing held pursuant to State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, the testimony was in conflict as to whether defendant had given his consent to the extraction of blood for the purpose of making a test to determine its alcoholic content. John O. Perkins, who acted as part-time deputy sheriff and also as ambulance driver, testified that he had obtained consent from defendant to the withdrawal of blood. Dr. Charles F. Mess also testified that defendant had consented. The blood was actually extracted by Dr. Sheila Muldoon. She was informed by Perkins that defendant had consented, but she did not personally obtain his consent. The blood sample was sent to the Bureau of Criminal Apprehension, where it was determined that it had an alcoholic content of .14 by weight. Defendant testified that he had a complete amnesia from the time he struck the bridge abutment until he woke up, some time later, in the emergency room

"(2) From an order granting a motion to quash an arrest warrant or a search warrant.

"(3) From an order granting the return of property or suppressing evidence, or suppressing a confession or admission, when accompanied by a statement as provided in section 632.12."

of the hospital. He denied any recollection of ever having consented to a blood test. His parents testified that they visited with him sometime in the early hours of the morning of the 24th and that he was semiconscious.

There is no need to state the evidence in greater detail. It is sufficient to say that the evidence was conflicting on this issue and the court found that defendant's physical condition was such that he did not voluntarily give his consent to the extraction of blood. Whether defendant gave his consent was a question of fact. The trial court's determination of that issue must be affirmed in the light of the evidence before us. State v. Campbell, 281 Minn. 1, 161 N. W. (2d) 47.

2. The court was of the opinion that Minn. St. 169.121 applied to a prosecution for criminal negligence and that under this statutory provision unless the defendant voluntarily consented to the extraction of his blood the results of the test were not admissible in evidence. As far as this appeal is concerned,[2] the court went no further except to find that defendant had not consented.

In its brief on appeal, the state seems to take the position that § 169.121 was not applicable, but then devotes practically its entire brief to showing that there was consent as required by that statutory provision.

Defendant now contends, as the trial court found, that the following portion of § 169.121, subd. 2, requires that in a prosecution for criminal negligence there must be a voluntary consent to a blood test as a prerequisite to the admission of the results of such test in the trial:

---

[2] The notice of appeal reads: "You, and each of you, will please take notice that the State of Minnesota in the above entitled action, appeals to the Supreme Court of the State of Minnesota from the Findings of Fact and Order on Admissibility of Evidence of this Court in this action, dated the 25th day of March, 1969, suppressing evidence of the alcohol tests made from the blood sample extracted from said defendant, Ralph David Capelle, in the emergency room of St. Marys Hospital on March 24, 1968."

"Upon the trial of any prosecution arising out of acts alleged to have been committed by any person arrested for driving, operating, or in actual physical control of a motor vehicle while under the influence of an alcohol beverage, the court may admit evidence of the amount of alcohol in the person's blood taken voluntarily or pursuant to section 169.123 as shown by a medical or chemical analysis of his blood, or of his breath or urine if the person arrested elected to take such test in lieu thereof."

The legislative history of the statute establishing criminal negligence as a crime and the above statute dealing with driving while under the influence of intoxicating liquor may be of some help in determining whether the quoted portion of § 169.121 has any application to a prosecution for criminal negligence.

Our statutes prohibited driving a motor vehicle while intoxicated long before the enactment of our criminal negligence statute. See, for instance, G. S. 1913, § 2640. Criminal negligence was first established as a crime by the legislature as part of a comprehensive traffic code adopted by L. 1937, c. 464. Art. V, § 25, of that code dealt with criminal negligence; § 26, with driving while under the influence of drugs or liquor. Section 25 was codified as Minn. St. 169.11 and § 26 as Minn. St. 169.12. While the legislature dealt with the two sections separately after 1937, they both remained part of the traffic code until 1963. See, Minn. St. 1961, §§ 169.11 and 169.121. L. 1957, c. 297, repealed Minn. St. 1953, § 169.12, and enacted in its place § 169.121, wherein the legislature provided for admitting in evidence the alcoholic content of the driver's blood in a case involving driving while under the influence of an alcoholic beverage. It left § 169.11 as it was. L. 1961, c. 454, established the so-called "implied consent" law, codified as § 169.123. Section 9 of c. 454 amended Minn. St. 1957, § 169.121, but, again, neither of these statutory provisions referred to the criminal negligence statute. In 1963, the legislature adopted a comprehensive criminal code. The parts of § 169.11 establishing criminal negligence as a crime were deleted from the statutes dealing with traffic offenses by L. 1963,

c. 753, art. 2, § 1, and, with some changes, now appear as § 609.21 of the 1963 Criminal Code. The following provision, which was a part of § 169.11 prior to the adoption of the 1963 Criminal Code, remained as Minn. St. 169.11 thereafter:

"The commissioner shall revoke the driver's license, and the secretary of state shall revoke the chauffeur's license, of any person convicted of the crime of criminal negligence in the operation of a vehicle resulting in the death of a human being."[3]

In the so-called implied-consent statute, the driver of a vehicle is given an option of consenting to a blood, urine, or breath test, or having his driver's license revoked for 6 months. There are no comparable sanctions existing in the criminal negligence statute except that part of § 169.11 which remained as part of the traffic code.

Section 169.121 was again amended, by L. 1967, cc. 283 and 569, in matters having no significance here except that § 169.121 as so amended again had no reference to the criminal negligence statute, which was at that time coded as § 609.21. Thus, while it appears that the law establishing criminal negligence had its origin in L. 1937, c. 464, as a companion to the section of the code dealing with driving while under the influence of intoxicating liquor, the two sections have been treated separately by the legislature ever since their original adoption. If the legislature had intended that the provisions of subd. 2 of § 169.121 were to govern a prosecution under what is now § 609.21, it could easily have said so.

We think that it follows that the trial court was in error in holding that the voluntary consent required by subd. 2 of § 169.121 governs a prosecution under § 609.21. For decisions in accord in other states having similar statutes, see Hoffman

---

[3] For comments of the Advisory Committee on the 1963 Criminal Code respecting the changes made in the criminal negligence statute, see Advisory Committee Comment, 40 M. S. A. p. 248. See, also, Law Review Commentaries, Id. p. 251.

v. State, 160 Neb. 375, 70 N. W. (2d) 314;[4] State v. Aarhus, 80 S. D. 569, 128 N. W. (2d) 881; People v. Manning, 7 App. Div. (2d) 1008, 184 N. Y. S. (2d) 240; People v. Leis, 13 App. Div. (2d) 22, 213 N. Y. S. (2d) 138.

It may be noted that in our implied-consent law, § 169.123, subd. 2, there are two prerequisites to the administering of the test:

"* * * [W]hen (1) the officer has reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while said person was under the influence of an alcoholic beverage, and (2) the said person has been lawfully placed under arrest for alleged commission of the said described offense in violation of Minnesota Statutes, Section 169.121, or an ordinance in conformity therewith. No action shall be taken hereunder against the said person unless the two enumerated conditions existed at the time the officer requested the chemical test specimen."

While § 169.123, subd. 2, undoubtedly has no application to the crime involved in this prosecution, it is significant that arrest is one of the prerequisites to the test, even in the area involved in § 169.121.

It must be kept in mind that at the time blood was taken from defendant here he was not under arrest. He was not arrested for criminal negligence until at least 2 months later. In all probability the result of the blood test was used as the basis for finding probable cause that defendant had committed the crime of criminal negligence and in justifying his arrest for that crime.

In Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. (2d) 908, the Supreme Court of the United States upheld

---

[4] At its next session subsequent to the court's opinion in this case, the Nebraska Legislature amended its statutes so as to make evidence of the alcoholic content of the defendant's blood admissible in a motor vehicle homicide case. See, Neb. Rev. Stat. 1943 (Reissue 1960) § 39-727.01; Laws of Nebraska 1957, c. 158.

the admission of a blood test as against constitutional challenges on the theory that it was a search incident to an arrest. In that case, the defendant was arrested before the blood was extracted.

Where the defendant had not been arrested, the decisions of state courts prior to Schmerber are not in accord. Compare, for instance, People v. Huber, 232 Cal. App. (2d) 663, 43 Cal. Rptr. 65, with Lebel v. Swincicki, 354 Mich. 427, 93 N. W. (2d) 281; State v. Kroening, 274 Wis. 266, 79 N. W. (2d) 810, 80 N. W. (2d) 816; People v. Young, 42 Misc. (2d) 540, 248 N. Y. S. (2d) 287.

Nor are the cases decided since Schmerber in accord. Compare State v. Davis, 108 N. H. 45, 226 A. (2d) 873, where the blood was taken without the defendant's consent prior to an arrest, with State v. Findlay, 259 Iowa 733, 145 N. W. (2d) 650, where the blood sample was taken from an unconscious defendant.[5]

See, *Destruction of Evidence—A Rationale for Blood Tests Without an Arrest?*, discussing the question in 18 Stanford L. Rev. 243. The note was written prior to Schmerber.

While the decision of the trial court rests on an erroneous premise, namely, that § 169.121 applies to this prosecution, the appeal is limited to a determination of whether the evidence is admissible on that theory. No question having been raised as to its admissibility on any other theory, we must hold that even though the trial court was in error as to the applicability of § 169.121 its finding of no consent must be affirmed and hence the result of suppression of the evidence, at least on this record, must be affirmed.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.

---

[5] The Iowa implied-consent law differs from ours, but the court's discussion of violation of Federal constitutional rights is pertinent.