118 N.J. Super. 476 (1972)
288 A.2d 583
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
L. RUSSELL McMASTER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1972.
Decided March 10, 1972.
*477 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. John P. Goceljak, Assistant Prosecutor, argued the cause for appellant (Mr. Joseph D.J. Gourley, Passaic County Prosecutor, attorney).
Mr. Arthur J. Lesemann argued the cause for respondent (Messrs. Mazer & Lesemann, attorneys).
PER CURIAM.
Defendant is charged with a violation of N.J.S.A. 39:4-50(a) (driving while under the influence of intoxicating liquor). While the complaint was pending the County Court suppressed the results of a blood alcohol test, ruling that it was not, as a matter of law, "medically acceptable" because the testing procedure was performed by a biochemist. The county judge concluded that "the law in the State of New Jersey is that no one, whether he is the finest technician, whether he is the most capable biologist, no one who is not a doctor or a registered nurse acting under the supervision of a doctor, has the right to invade the human envelope." We granted leave to appeal on motion by the State. R. 2:2-4. We reverse.
Defendant's position is that the holdings of the United States Supreme Court in Schmerber v. California, *478 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and our Supreme Court in State v. Macuk, 57 N.J. 1 (1970), prohibit the use of the results of a blood test as evidence unless the test is performed either by a licensed physician or at his direction. We do not read either of those opinions, or others cited in support of this argument, to so hold.
In this case the blood sample of defendant (who himself is a licensed physician of this State) was obtained and analyzed by Harry Clark, the licensed director of the Pompton Medical Laboratory, Pompton Plains, which in turn is also licensed by the New Jersey State Board of Medical Examiners. The blood was extracted by Clark from Dr. McMaster in the emergency room of the Chilton Memorial Hospital, Pequannock Township, at the request of police officer Romanelli. There is no dispute that the blood was taken in a medically accepted environment, and defendant concedes that Clark was completely qualified to carry out the testing procedures  except for the fact that he was not asked to carry out the test by a licensed physician.
The concern of the United States Supreme Court and our own Supreme Court with respect to such testing procedures is that they be carried out under such circumstances as to protect the life and health of the individual tested. As was stated by the United States Supreme Court in Schmerber, above:
Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment  for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain. [384 U.S. at 771-772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; emphasis added]
Compare Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), where the conviction was set aside because the use of a stomach pump to remove narcotics swallowed *479 by defendant in order to prevent their seizure by the police was found to be conduct which "shocked the conscience" and was so "brutal and offensive" that it did not comport with traditional ideas of fair play and decency.
Defendant also argues that the provisions of N.J.S.A. 45:9-42.1 et seq., governing the activities of bio-analytical laboratories and laboratory directors, render the results of the test involved here medically unacceptable because the test performed was not performed at the request of a licensed physician. We fail to see any relationship between the provisions of the statute cited and the concept of "medically acceptable" as used by the court in such cases as Schmerber and Macuk, above. Without belaboring this point, we observe that under the provisions of N.J.S.A. 45:9-42.19 blood tests are authorized to be made by bio-analytical laboratories at the request of local boards of health. Those boards usually include a majority of nonmedical members.
Defendant also seeks to sustain the order of suppression below by claiming that the blood test involved here was not performed as an incident of a lawful arrest. The argument is frivolous in view of the decision of the Supreme Court in Schmerber, above. See 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. It is elementary that the alcoholic content of human blood begins to diminish after drinking stops. The officer was obviously confronted with an emergency.
The decision of the County Court is reversed and the order of suppression vacated. The case is remanded to the Municipal Court of West Milford Township for trial.