Fred J. LAYLAND, Petitioner,

v.

STATE of Alaska, Respondent.

No. 2264.

Supreme Court of Alaska.

May 21, 1975.

Albert Maffei, Maffei, Inc., Anchorage, for petitioner.

Norman C. Gorsuch, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for respondent.

## OPINION

Before RABINOWITZ, C. J., CONNOR, ERWIN and BOOCHEVER, JJ., and DIMOND, J. Pro Tem.

RABINOWITZ, Chief Justice.

In November of 1973 on the Glenn Highway near Anchorage, an automobile driven by petitioner Layland collided with another vehicle. One of the occupants of the other vehicle was killed; Layland was injured and was taken to a hospital for treatment. While at the hospital, Layland was requested, by a state trooper, to consent to the taking of a sample of blood for the purpose of testing its alcohol content.[1] When Layland refused to consent, an oral order authorizing the withdrawal of petitioner's blood was obtained from District Judge Brewer.[2] The record demonstrates that no search warrant authorizing the taking of the blood sample as obtained prior to the withdrawal of the blood nor was Layland's arrest contemporaneous with the taking.[3]

---

1. According to the accident report which is part of the record in this matter, Layland stated:

   I don't see why I have to have blood taken from me, I wasn't even driving. I was parked and I've already lost enough blood anyway. No, I'm not going to let anyone take any blood from me for any blood alcohol test.

2. Respondent, in its brief before the court, states, "An oral order authorizing the withdrawal of blood was then obtained from a district judge, and the sample was taken." "No warrant, in the technical sense of an order on paper supported by an affidavit, seems to have been obtained."

3. Layland was arrested some three months after the blood sample was taken.

In February of 1974, an indictment was returned charging Layland with the offense of negligent homicide.[4] One of the specific acts of negligence charged in the indictment was that Layland operated a motor vehicle while intoxicated in violation of AS 28.35.030. Layland then moved to suppress the results of the blood-alcohol test on the ground that the taking of the blood sample without his consent violated his right to be protected from unreasonable searches and seizures under both the federal and Alaska constitutions. U.S. Const. amend. XIV; Alaska Const. art. I, § 14. Following oral argument, the superior court denied the motion to suppress.[5]

This petition presents the issue of whether the superior court's refusal to suppress the results of the blood-alcohol test in the circumstances of the instant case was erroneous.

■ Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), is the leading case dealing with the Fourth Amendment constraints on the taking of blood samples. In *Schmerber,* the appellant was involved in an automobile accident, and a patrolman who arrived at the scene shortly after the accident smelled liquor on appellant's breath and noticed that appellant's eyes had "sort of a glassy appearance." Appellant was thereafter transported to a hospital for treatment of his injuries and while at the hospital was arrested for operating a motor vehicle while under the influence of intoxicating liquor. After the arrest had taken place, a sample of appellant's blood was extracted by a physician at the direction of the police officer. Appellant did not consent to the withdrawal of his blood, nor did the officer have a search warrant at the time. The United States Supreme Court held that a blood sample may be taken from a lawfully arrested person without that person's consent and that the blood test results are admissible evidence. The holding was stated as follows:

> [W]e conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.[6]

■ ■ A majority of the courts which have confronted the issue since *Schmerber* have interpreted *Schmerber* to require an arrest before a blood sample can be taken.[7] The intermediate appellate court of New Jersey seems to interpret *Schmerber* as permitting the taking of a blood sample without a prior arrest under the exigent

---

4. AS 11.15.080.

5. Although Judge Occhipinti's order denying Layland's suppression motion does not reveal the grounds upon which it was based, respondent in its brief asserts that "the court denied the motion to suppress the blood sample on the grounds that exigent circumstances existed for the search."

6. Schmerber v. California, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920 (1966). The Court was careful to note that "the facts which established probable cause to arrest . . . also suggested the required relevance and likely success of a test of petitioner's blood for alcohol . . . ." 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed. 2d at 919. Given Schmerber's manifest symptoms of drunkenness and the fact that his blood-alcohol content was rapidly diminishing, the officer was permitted to draw the inferences supporting the search and to take Schmerber's blood without first obtaining a search warrant.

The Supreme Court also safeguarded Schmerber's interests by ensuring that the blood sample and test were performed in a reasonable manner. We are persuaded, as was the Supreme Court, that grave constitutional questions would arise if the blood sampling "involving use of medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment . . . ." 384 U.S. at 771–72, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. Here, however, Layland's blood was taken by a physician in a hospital environment in accordance with accepted medical practices.

7. State v. Wetherell, 82 Wash.2d 865, 514 P.2d 1069 (1973); People v. Superior Court of Kern County, 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972); People v. Todd, 7 Ill.App.3d 617, 288 N.E.2d 512, 514 (1972); State v. Capelle, 285 Minn. 205, 172 N.W.2d 556 (1969); State v. Davis, 108 N.H. 45, 226 A.2d 873 (1967). The cases are collected in R. Erwin, Defense of Drunk Driving Cases § 32.04, at 32–24 to 32–29 (3d ed. 1974).

circumstances exception to the search warrant requirement.[8] Several courts, while acknowledging the arrest requirement of *Schmerber,* hold that requirement satisfied in the absence of a prior arrest where the accused was either unconscious or semiconscious and therefore could not be made aware that he was under arrest.[9] There are at least four ways in which the state's taking of a sample of Layland's blood could be deemed constitutional under the parallel search and seizure provisions of the federal and Alaska constitutions. First, it is clear that the blood sample could have been lawfully obtained pursuant to a search warrant based on probable cause. When, as in the case at bar, a blood sample is taken without a warrant, the taking is considered an unconstitutional search and seizure unless there was consent to the search;[10] or the search was carried out incident to a lawful arrest; or the search was made under circumstances which indicate that destruction of known evidence was imminent.[11]

■ Although an oral order was obtained from District Judge Brewer prior to the taking of a blood sample from Layland, the state, as previously indicated, admits that no search warrant was ever issued.[12] Thus, it must be determined whether any of the established exceptions to the search warrant requirement are applicable to the factual situation portrayed in the instant case. We turn initially to the consent exception. Since Layland was conscious and did not consent to the taking of the blood sample, there was no express consent to the search on his part. Further, Alaska's Implied Consent statute, AS 28.35.031, does not furnish the requisite consensual basis because it authorizes only a chemical breath test, not the taking of blood for a blood-alcohol test.[13]

■ ■ As to the second exception to the warrant requirement, the record shows

---

8. State v. McMaster, 118 N.J.Super. 476, 288 A.2d 583 (N.J.App.Div.1972) ; State v. Gillespie, 100 N.J.Super. 71, 241 A.2d 239 (N.J.App.Div.1968).

9. *See, e. g.,* Carrington v. Superior Court, 31 Cal.App.3d 635, 107 Cal.Rptr. 546 (1973) ; People v. Fidler, 175 Colo. 90, 485 P.2d 725 (1971).

10. In McCoy v. State, 491 P.2d 127, 132 (Alaska 1971), this court stated that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable. *See also* Sleziak v. State, 454 P.2d 252, 256 (Alaska 1969).

11. This latter category is often referred to as the "exigent circumstances" exception to the search warrant requirement. *See* Erickson v. State, 507 P.2d 508, 514–15 (Alaska 1973).

12. *Compare* Criminal Rule 16(c) (1) (vii) which provides, in regard to non-testimonial identification procedures, that :

A judicial officer may upon motion, for good cause shown, require the accused to do or submit to any or all of the following :

.    .    .    .    .

(vii) Permit the taking samples of his blood, hair and other materials of his body which involve no unreasonable intrusion thereof ; . . . .

*See also* Uniform Rule of Criminal Procedure 434 (Approved Draft, 1974).

13. We note that AS 28.35.031 requires that a person be

lawfully arrested for an offense arising out of acts alleged .to have been committed while the person was operating or driving a motor vehicle while under the influence of intoxicating liquor

before even a breath test can be administered. Most implied consent statutes require an arrest as a precondition to their applicability. And most states have interpreted the arrest requirement to be of constitutional, not merely statutory origin. *See* Note, Arrest Requirement for Administering Blood Tests, 1971 Duke L.J. 601.

Both Layland and the state concede that a chemical test of a driver's breath is not the exclusive means of attempting to discover and prove a driver's blood alcohol content. The basis for this concession is AS 28.35.033(c) which provides :

The provisions of (a) of this section [detailing the statutory presumptions derived from breath test results] may not be construed to limit the introduction of any other competent evidence bearing upon the question of whether the person was or was not under the influence of intoxicating liquor.

We agree with the parties' construction of AS 28.35.033(c). In our view, this statute does not preclude the introduction of blood test results in circumstances where the taking of the blood sample did not violate any of the accused's constitutional rights.

that Layland had not been arrested either before or substantially contemporaneously with the taking of the blood sample.[14] Warrantless arrests are regulated by AS 12.25.030 which provides that

A private person or a peace officer without a warrant may arrest a person

(1) for a crime committed or attempted in his presence;

(2) when the person has committed a felony, although not in his presence;

(3) when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it.

Under AS 12.25.030, a peace officer may not arrest a person for a misdemeanor violation unless the crime was actually committed or attempted in the officer's presence. In Howes v. State, 503 P.2d 1055 (Alaska 1972), we said, in discussing AS 12.25.030(1), "Two elements are involved in the term 'presence': (1) The officer must observe acts which are indicative of the commission of an offense; (2) The officer must be aware that he is in fact seeing an offense being committed."[15] The Alaska legislature has classified both reckless driving[16] and operating or driving an automobile under the influence of intoxicating liquor[17] as misdemeanors. Thus, under the facts of this case, the state trooper who arrived at the accident scene could not arrest Layland without a warrant for either reckless driving or drunk driving since neither of these offenses was committed or attempted in his presence.[18]

■ Subsection (3) of AS 12.25.030 does permit arrest where a felony has in fact been committed and the officer has "reasonable cause" for believing the person to have committed the felony.[19] Likely felony charges that could have arisen out of the accident here are negligent homicide[20] and manslaughter.[21] We agree that on this record it appears that the state trooper had probable cause to make a warrantless arrest of Layland for the offense of negligent homicide.[22] Yet Layland's arrest did not occur prior to or substantially contemporaneously with the time his blood sample was taken at the hospital.[23]

14. In Avery v. State, 514 P.2d 637 (Alaska 1973), we said:
It is established that once a person is lawfully arrested, the arresting officers have the right, without a search warrant, to search 'the arrestee's person and the area "within his immediate control" . . .' for weapons and destructible evidence of the crime.
514 P.2d at 639 (footnote omitted).

15. 503 P.2d at 1058 (footnote omitted). In Miller v. State, 462 P.2d 421, 425–26 (Alaska 1969), this court had stated that a warrantless misdemeanor arrest is lawful
where the peace officer has perceived facts which would lead a reasonable man to believe that the arrestee has committed or attempted to commit an offense in his presence.

16. See AS 28.35.040.

17. See AS 28.35.030.

18. Although not applicable on the facts presented by this record, see Howes v. State, 503 P.2d 1055, 1059 (Alaska 1972), for a discussion of the "police team" rule.

19. McCoy v. State, 491 P.2d 127 (Alaska 1971); Merrill v. State, 423 P.2d 686, 699 (Alaska 1967).

20. See AS 11.15.080.

21. See AS 11.15.040.

22. According to the state's characterization of the facts of this case, when the state trooper arrived on the scene of the accident, he found Steven Rotondo jammed behind the steering wheel of his vehicle and was informed by rescue personnel that Rotondo was dead. Trooper Cordy then found Layland on the front seat of his vehicle, with his legs underneath the steering wheel, lying on his side to the right. The officer detected an odor of alcohol on Layland's breath. The officer also observed several empty beer bottles and one unopened bottle in the car. Layland was injured, but remained conscious at all times.

23. In order to provide adequate protection to the arrestee's legitimate interests in maintaining his privacy, in McCoy v. State, 491 P.2d 127 (Alaska 1971), the following restrictions were placed on warrantless incidental searches of the person:
(1) The arrest must be valid—probable cause for the arrest must exist or the search is unconstitutional. (2) The search must be roughly contemporaneous with the arrest . . . . (3) The arrest must not be a pretext for the search; a search incident to a sham arrest is not valid. . . .

Thus, we hold that this exception to the warrant requirement is not applicable in light of the facts of the instant case.[24]

■■■ We emphasize the requirement of, at least, a "substantially contemporaneous" arrest because the state, in the case at bar, advances the argument that the investigating officer had probable cause to arrest Layland at the scene of the accident for negligent homicide, but he did not do so because Layland was in need of medical assistance and the officer was concentrating on assisting him. Assuming that the investigating officer did have probable cause to arrest, the state further argues that "the formal recitation of 'you are under arrest' is practically meaningless, and should be excused."

We reject the state's contention for the following reasons. In Cipres v. United States, 343 F.2d 95 (9th Cir. 1965), the Ninth Circuit stated the prevailing rule as follows:

[A] prior search may be valid as incident to a substantially contemporaneous arrest without a warrant if the arresting officers had probable cause for the arrest at the time of the search, and the circumstances suggested that immediate search was necessary to preserve material subject to seizure.[25]

Alaska had adopted this view in Goss v. State, 390 P.2d 220 (Alaska), cert. denied, 379 U.S. 859, 85 S.Ct. 118, 13 L.Ed.2d 62 (1964). There a state trooper on night patrol observed a car, with its headlights off, being driven away from the side of a business premises. The trooper followed the car, stopped it, and, through the window of the car, saw a pistol and a number of folded shirts, which seemed to be new merchandise. He then searched the three occupants of the car and the car itself before returning to the business premises, finding that the premises had been burglarized, and placing the three men under arrest. Justice Dimond, speaking for this court, upheld the warrantless search as incident to a lawful arrest because the circumstances

would be enough to warrant a prudent man in believing that a felony had been committed. The existence of probable cause to make an arrest without a warrant justified the officer in conducting an immediate search without a warrant. The search was incident to a lawful arrest although it preceded the arrest.[26]

It is our belief that the rule as applied in *Goss* and enunciated in *Cipres* comports with constitutional standards, under the Fourth Amendment to the United States Constitution and article I, section 14 of the Alaska Constitution, only if the requirement of substantial contemporaneity of search and arrest is strictly construed. A contrary holding would essentially validate

---

(4) Finally, the arrest must be for a crime, evidence of which could be concealed on a person.

491 P.2d at 138 (footnotes omitted).

24. Layland was not arrested until approximately three months after the accident.

25. 343 F.2d at 98 (footnote omitted). Similarly, in United States v. Skinner, 412 F.2d 98 (8th Cir. 1969), the court said:

We hold that where the government sustains its burden of proving that a police officer had probable cause for arresting a suspect for a felony and where it is clear that evidence seized in a contemporaneous search of the suspect's person was in no way necessary to establish probable cause, the search is incidental to the arrest. The search is valid whether it took place moments before or moments after the arrest-

ing officer took the suspect into actual custody or announced his intention of so doing. *Id.* at 103. *See also* Harris v. United States, 389 F.2d 727, 730 (5th Cir. 1968); United States v. Gorman, 355 F.2d 151, 159 (2d Cir. 1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966); State v. Delmondo, 54 Haw. 595, 512 P.2d 551, 554 (1973); People v. Simon, 45 Cal.2d 645, 290 P.2d 531, 533 (1955).

Representative of the minority view which requires that there be a valid antecedent arrest to justify a warrantless search is United States v. Royster, 204 F.Supp. 760, 762–63 (N.D.Ohio 1961). Other cases pertaining to the lawfulness of nonconsensual searches and seizures without a warrant prior to arrest may be found in Annot., 89 A.L.R.2d 715 (1963).

26. Goss v. State, 390 P.2d 220, 223–24 (Alaska 1964) (footnotes omitted).

"exploratory searches" by police and emasculate the search warrant requirement. For the reason for permitting a "search incident to arrest" to precede the arrest is that

> [w]hen probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality· of time to control when there has been no real interference with the substantive rights of a defendant.[27]

■ ■ The only remaining possible legal justification for the taking of the blood sample without a search warrant is that exigent circumstances existed, because destruction of evidence was imminent since Layland's blood-alcohol level was rapidly diminishing.[28] Layland contends that this exception to the warrant requirement[29] is unavailable because *Schmerber* approves drawing blood samples only when the person has been placed under arrest. The state counters with the argument that "the question of whether the officer went through the formality of an arrest procedure is properly irrelevant, and should not be permitted to obscure the real issue, which is whether the circumstances confronting him, including the inevitable destruction of the evidence sought without prompt action, justified an immediate search without a warrant."

Again we find we must disagree with the state's position. In our view, strict adherence to the substantially contemporaneous arrest requirement ensures to persons suspected of driving under the influence of alcohol protection from arbitrary denials of their right of privacy. Adherence to the substantially contemporaneous arrest prerequisite provides some measure of assurance that probable cause is based upon considerations independent of the blood-alcohol test results. To be deterred are exploratory searches in which an officer authorizes the drawing and taking of a subject's blood, and then, on the basis of the results of the blood-alcohol test, determines whether or not to arrest the person.[30]

■ Exigent circumstances, in and of themselves, do not justify invasions of an individual's body to extract blood. The exigent circumstances cases often involve vehicle searches,[31] which differ significantly from "body" searches.[32] We think the Supreme Court in *Schmerber* employed the exigent circumstances rationale to excuse the failure to obtain a search warrant after the subject's arrest and before the blood

27. Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965). *See also* People v. Simon, 45 Cal. 2d 645, 290 P.2d 531, 533 (1955).

28. Under AS 28.35.033, anyone with 0.05 percent or less by weight of alcohol in his blood is presumed not to be under the influence of alcohol, and anyone with a concentration level of 0.10 percent or more is presumed to be under the influence of alcohol.

29. The destruction-of-evidence exception to the rule that a warrant is a prerequisite to a search originated in a dictum of the Supreme Court in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). This line of cases permits the police, if they reasonably believe evidence is being destroyed, to search without a warrant and, by implication, without making a contemporaneous arrest.

30. *See* Note, Arrest Requirement for Administering Blood Tests, 1971 Duke L.J. 601. *See also* 79 Harv.L.Rev. 677 (1966).

31. *See, e.g.,* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In Ellison v. State, 383 P.2d 716 (Alaska 1963), this court said:

> We are aware that police officers are occasionally faced with sudden and unexpected situations in which they may reasonably conduct a search without a search warrant and apart from a contemporaneous arrest, as in the case of a moving vehicle, but the burden is upon them to demonstrate the compelling reasons which justified the search.

*Id.* at 720 (footnote omitted). *Compare* Stevens v. State, 443 P.2d 600, 602 (Alaska 1968).

32. *See generally* Note, Destruction of Evidence—A Rationale for Blood Tests Without an Arrest?, 18 Stan.L.Rev. 243 (1965).

sample was taken.[33]   We thus conclude that the exigent circumstances exception to the search warrant requirement cannot sustain the search which was conducted to obtain blood from Layland's body.

■■■   We therefore hold that the superior court's order denying Layland's motion to suppress the blood-alcohol test findings should be reversed.   Here blood was withdrawn from a conscious nonconsenting person without an arrest substantially contemporaneous with the taking.[34]

Reversed and remanded for further proceedings.

33. Schmerber v. California, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908, 919–20 (1966).

34. As mentioned previously, in the circumstances of this case, we believe Layland could have been arrested, but he was not.   In other drunk driving cases, if the arrest requirement works a hardship, Alaska's arrest laws could be modified, as has been done in other states.
For example, the California Vehicle Code was amended in 1969 to read as follows:

> Notwithstanding any other provision of law a peace officer may, without a warrant, arrest a person involved in a traffic accident when the officer has reasonable cause to believe that such person had been driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug.

Cal. Vehicle Code § 40300.5 (West 1971).