IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
(Heard at Clarksville)

FILED

April 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellant | ) | FILED: __April 12, 1999__ |
| | ) | |
| v. | ) | SUMNER CRIMINAL |
| | ) | |
| BOBBY CRUTCHER | ) | Hon. Jane Wheatcraft, Judge |
| | ) | |
| Appellee. | ) | NO. 01S01-9804-CR-00081 |
| | ) | |
| | ) | (Search and Seizure) |
| | ) | |

For the Appellant:

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Karen M. Yacuzzo
Assistant Attorney General

For the Appellee:

Bryce C. Ruth, Jr.
White House, Tennessee

OPINION

AFFIRMED                                                                 BARKER, J.

**OPINION**

This is an appeal by the State of Tennessee from the judgment of the intermediate appellate court affirming the suppression of evidence in the trial court below.[1] The sole issue is whether the warrantless police search of the appellee's motorcycle violated his rights guaranteed by the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution.

The State contends that the suppression of evidence was improper because the search in question was incident to a lawful arrest. For the reasons that follow, we conclude that the appellee, Bobby Crutcher, was not under arrest at the time of the police search. Accordingly, we affirm both the trial court and the Court of Criminal Appeal's determination that the search was not incident to a lawful arrest. The evidence obtained from the search was properly suppressed.

**BACKGROUND**

On October 19, 1995, Officer Frank Moniz of the Gallatin Police Department observed three motorcyclists drive away from a traffic light at an excessive rate of speed. The officer activated his emergency flashing equipment and pulled over two of the speeding motorcyclists. However, the third motorcycle, driven by the appellee, accelerated even more in an attempt to flee from the pursuing officer. Officer Moniz gave chase to the appellee and the two vehicles reached speeds of one hundred (100) miles per hour. The officer radioed for assistance and eventually slowed his vehicle down upon entering a residential area.

---

[1]Oral argument was heard in this case on October 15, 1998 in Clarksville, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

As Officer Moniz crested a hill in his patrol car, he observed the appellee drive up an embankment and wreck into a storm drain. The appellee had been thrown approximately twenty feet away from his motorcycle and was crawling out of the roadside brush when the officer drove up to apprehend him. Officer Moniz testified that upon reaching the appellee, he placed one arm behind the appellee's back and intended to arrest him for reckless endangerment and evading arrest.[2] However, when the appellee complained of injuries, Officer Moniz ceased handcuffing him and called for an ambulance.

Officer Moniz testified that he made no additional effort to arrest the appellee at the accident scene. While waiting for the ambulance, Officer Moniz and other police officers stayed with the appellee and made him lie still for his safety. The appellee questioned Officer Rich Evans about what was going to happen to him. Officer Evans told the appellee that he would be taken to a nearby hospital for medical treatment. The officers did not discuss criminal charges or arrest proceedings with the appellee and they did not give him a Miranda warning at the scene.

Officer Moniz testified that an ambulance arrived only minutes after he radioed for medical assistance. As the appellee was being loaded into the ambulance, his friend, Jeff Crook, asked if he could take control of the wrecked motorcycle. The appellee agreed and requested that Mr. Crook also take possession of the gold chains that the appellee had around his neck.

Officer Evans testified that he and the other officers agreed to let Mr. Crook remove the motorcycle from the scene. However, before releasing the bike, Officer

_____

[2]There was some evidence that Officer Moniz also planned to charge the appellee with D.U.I. Apparently while at the hospital, the appellee submitted to a blood-alcohol test. The results showed that his blood/alcohol level was less than 0.10 percent.

3

Evans inventoried the contents of a backpack and jacket that were located on it.[3]  The officer found a loaded .38 caliber handgun located inside the backpack and found a pill bottle inside the upper left pocket of the jacket.[4]  An examination of the pill bottle revealed several small packets of a white powder, which later tested positive for cocaine.

The appellant was taken directly to Sumner Regional Medical Center from the scene of the accident.  He spent several hours there receiving medical x-rays and treatment.  The record reflects that during that time, Officer Evans obtained an arrest warrant for the appellee based upon the evidence of the cocaine and firearm possession.  The appellee was released from the medical center that same evening and was taken to the Drug Task Force Center in Sumner County.  The record is silent as to what transpired at the Drug Task Force Center.  However, the evidence shows that on the following day, the appellee was transported back to Sumner Regional Medical Center after hospital officials notified police that the appellee had a broken neck.

The appellee stayed at Sumner Regional Medical Center for approximately four days.  The record reflects that Officer Moniz obtained an arrest warrant for the appellee on October 24, 1995, based upon the charges of evading arrest and reckless endangerment.  Officer Moniz testified that the appellee was arrested after his release from the medical center, and was charged with:  (1) possession of a controlled substance, to wit:  cocaine over 0.5 grams, with intent to sell; (2) possession of a

---

[3]Officer Evans testified that he searched the contents of the motorcycle based upon a policy of the Gallatin Police Department which required an inventory search before releasing personal property to third parties.  The motorcycle was approximately twenty feet from the roadside when the search was conducted.  The record is unclear whether the appellee was still at the scene at that time.

[4]The Gallatin police impounded appellee's motorcycle upon finding the cocaine substance.

handgun during the commission of a felony; (3) reckless endangerment; and (4) evading arrest.

The appellee filed a motion to suppress the cocaine substance and the handgun on the ground that they were obtained through an improper search and seizure. Following an evidentiary hearing, the trial court granted the motion to suppress finding that the search was without probable cause and did not fall within an exception to the warrant requirement. The trial court determined that there were no grounds for an inventory search since a third party, Jeff Crook, was available to remove the motorcycle from the scene. In addition, the court found that the search was not incident to a lawful arrest because the appellee was not under arrest when the search was conducted.

On interlocutory appeal, the intermediate appellate court affirmed the suppression order. The State of Tennessee appeals to this Court contending that the search was proper as incident to a lawful arrest. The State concedes that the police officers were not entitled to conduct an inventory search. See Drinkard v. State, 584 S.W.2d 650, 653-54 (Tenn. 1979). Our inquiry, therefore, is whether the appellee was under arrest when the police officers conducted the search.

### STANDARD OF REVIEW

This case involves a review of the trial court's findings of fact and law in granting the motion to suppress. In State v. Odom, 928 S.W.2d 18, 22-23 (Tenn. 1996), this Court clarified the standard to be used by appellate courts when reviewing those findings:

5

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing, including all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

Id. at 23. The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews *de novo*. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Odom, 928 S.W.2d at 23. We apply these standards to address the issue in this case. Contrary to the position taken by the dissent, we consider the issue of whether an arrest was made for Fourth Amendment purposes to be one primarily of fact. See Childs v. State, 584 S.W.2d 783, 786-87 (Tenn. 1979) (reviewing whether an accused was in custody for purposes of giving the Miranda warnings as primarily a question of fact).

**DISCUSSION**

The fundamental principle of search and seizure jurisprudence is that the police may not conduct a search unless they first show probable cause and obtain a warrant from a neutral magistrate.[5] Under both the federal and state constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression, unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997).

---

[5]The right to be free from unreasonable searches and seizures is provided in the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

One exception to the warrant requirement is a contemporaneous police search that follows a lawful arrest. Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). When police officers make a lawful custodial arrest, they are permitted, as incident to the arrest, to search the person arrested and the immediately surrounding area. Chimel, 395 U.S. at 763, 89 S.Ct. at 2040. The rationale for those searches is the need to disarm the arrestee in order to safely take him into custody, and the need to preserve evidence for later use at trial. United States v. Robinson, 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973).

In cases where the arrestee is an occupant of a vehicle, police officers may conduct searches, contemporaneous to the arrest, of the passenger compartments inside the vehicle. New York v. Belton, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). Following Belton, this Court has joined several jurisdictions[6] in upholding the validity of those searches even where the arrestee is neutralized in the back seat of a police car when the search is conducted. Watkins, 827 S.W.2d at 295-96.

The State contends that the appellee was under arrest at the accident scene and that the search was proper under Belton and Watkins. We need not address whether the search fell within the scope of Belton and Watkins because we affirm the trial court's conclusion that the appellee was not under arrest when the search was conducted.

---

[6]See United States v. Sholola, 124 F.3d 803, 817 (7th Cir. 1997); United States v. Franco, 981 F.2d 470, 472 (10th Cir. 1992); United States v. White, 871 F.2d 41, 44 (6th Cir. 1989), *affirmed after remand* 892 F.2d 1044 (6th Cir. 1989); United States v. Karlin, 852 F.2d 968, 971-72 (7th Cir. 1988); State v. Pittman, 556 N.W.2d 276, 282-83 (Neb. Ct. App. 1996); State v. Haught, 831 P.2d 946, 948 (Idaho Ct. App. 1992); State v. Garcia, 801 S.W.2d 137, 141-42 (Tex. App. 1990). But see United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987); State v. Greenwald, 858 P.2d 36, 37 (Nev. 1993).

"The standards for reviewing police conduct become more stringent as the degree of invasion of the citizen's privacy increases." State v. Hawkins, 969 S.W.2d 936, 938 (Tenn. Crim. App. 1997). There are three tiers of law enforcement action involving "seizures" of the person under the Fourth Amendment. These situations include a wide range of invasive actions, ranging from the "stop and frisk" under reasonable suspicion, to the "custodial arrest" based on probable cause, to incarceration of an offender following a custodial arrest.

Not all lawful seizures justify the same degree of search. For instance, a police officer who has no reasonable suspicion that criminal activity has taken place may still make a casual, investigatory stop; but the officer's law enforcement authority under such circumstances is limited to informal questioning of the persons involved. Florida v. Bostick, 501 U.S. 429, 433, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); State v. Butler, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990). Where, on the other hand, the officer has a reasonable, articulable suspicion that a person has engaged in, or is preparing to engage in, criminal behavior, the level of permissible law enforcement authority is raised to the stop and frisk of the person under the principles of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such cases, a limited pat-down search of the person and a limited search of the passenger compartment of the vehicle in which the person was riding are permissible upon a showing that such action is justified to protect the officer. Id., 392 U.S. at 27, 88 S.Ct. at 1883; State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

By comparison, the next level of law enforcement authority, the custodial arrest, is justified upon a showing of probable cause to believe that a crime has been committed, and that the suspect of the investigation committed that crime. As discussed above, a lawful custodial arrest carries with it the power to perform a search "incident to arrest," which is a contemporaneous search of both the person arrested,

8

and the area into which the arrestee might reach for a weapon or destroy evidence, including the passenger area of any vehicle in which the arrestee was riding. <u>Chimel</u>, 395 U.S. at 763, 89 S.Ct. at 2040; <u>Belton</u>, 453 U.S. at 457, 101 S.Ct. at 2862.

The most invasive law enforcement seizure is incarceration. Law enforcement authority in such cases extends to performing a detailed "inventory search" of all personal effects in the arrestee's possession, and possibly of the vehicle in which he was riding at the time of arrest, if that vehicle is also seized. <u>Illinois v. Lafayette</u>, 462 U.S. 640, 648, 103 S.Ct. 2605, 2611, 77 L.Ed.2d 65 (1983); <u>South Dakota v. Opperman</u>, 428 U.S. 364, 372, 96 S.Ct. 3092, 3099, 49 L.E.2d 1000 (1976).[7]

The bottom line is this: when the police conduct a full search under <u>Chimel</u>, the seizure of the suspect must rise to the level of a custodial arrest.[8] The only possible exception to this rule might be a limited search in cases where there is probable cause to believe that a crime has been committed, probable cause to believe that evidence of *the crime in question* will be found, and the necessity for an immediate, warrantless search to prevent the destruction or loss of evidence.[9] In this case, however, the search of the appellee's motorcycle was wholly unrelated to the crime for which police

---

[7]An inventory search of a vehicle will be upheld, however, only when there is no reasonable alternative to seizure of the vehicle. <u>Drinkard v. State</u>, 584 S.W.2d 650, 653 (1979).

[8]The dissent seems to infer that because Officer Moniz had probable cause to arrest the appellee for evading arrest and reckless driving, the appellee was necessarily "arrestable;" and therefore, whether or not an arrest had actually been effectuated, a search incident to arrest was justified. We decline to hold that a search may be upheld as a search incident to arrest merely because a lawful custodial arrest "could have" been made. <u>State v. Moore</u>, 949 S.W.2d 704, 706 (Tenn. Crim. App. 1997), <u>no app. filed</u>, which appears to hold to the contrary, is hereby overruled. <u>Accord</u>, <u>Layland v. State</u>, 535 P.2d 1043 (Alaska 1975), <u>overruled on other grounds</u>; <u>State v. Greenwald</u>, 109 Nev. 808, 858 P.2d 36 (1993); <u>People v. Evans</u>, 43 N.Y.2d 160, 371 N.E.2d 528, 400 N.Y.S.2d 810 (N.Y. 1977).

[9]<u>See</u> e.g., <u>Cupp v. Murphy</u>, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973)(warrantless search of evidence beneath suspect's fingernails reasonable in strangulation murder case even in the absence of a contemporaneous arrest, because of "evanescent nature" of such evidence); <u>United States v. Chapel</u>, 55 F.3d 1416, 1419 (9th Cir. 1995)(warrantless seizure of DUI suspect's blood reasonable even without contemporaneous arrest because the accuracy of blood-alcohol evidence diminishes quickly over time); <u>United States v. Berry</u>, 866 F.2d 887, 891 (6th Cir. 1989)(same factual scenario and rationale as in <u>Chapel</u>). For an excellent discussion of the narrow <u>Cupp</u> exception see 3 Wayne R. LaFave, <u>Search and Seizure</u> § 5.4(b) at 155-163 (1996 ed.).

had probable cause to arrest. In order to justify a full <u>Chimel</u> search incident to arrest, the critical question remains whether the appellee was, in fact, arrested at the scene.

In Tennessee, an arrest is more specifically defined as "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." <u>West v. State</u>, 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968) (citations omitted); <u>Robertson v. State</u>, 184 Tenn. 277, 284, 198 S.W.2d 633, 635-36 (1947) (citations omitted); <u>State v. Williams</u>, 914 940, 947 (Tenn. Crim. App. 1995).[10] An arrest may be affected without formal words or a station house booking. 5 Am. Jur. 2d *Arrest* § 2 (1995). However, there must be actual restraint on the arrestee's freedom of movement under legal authority of the arresting officer. <u>Id.</u>

Relying on that definition, we acknowledge that the facts in this case are close as to whether the appellee was under arrest at the accident scene. The trial court found that Officer Moniz apprehended the appellee and intended to place him under arrest following the wreck. The officer testified, however, that he did not arrest the appellee due to the appellee's injuries. Although Officer Moniz had probable cause to make an arrest at the scene, neither he nor Officer Evans discussed criminal charges or arrest procedures with the appellee. The appellee questioned the officers and was told only that he would be taken to a nearby hospital for medical treatment. The

---

[10]The dissent opines that the definition of "arrest" adopted in <u>Robertson</u> and reaffirmed in <u>West</u> is no longer accurate. Cited are a series of United States Supreme Court cases and Tennessee cases that the dissent claims establish a new definition of arrest, to wit: "an arrest occurs if, in view of all the circumstances surrounding the incident, a reasonable person would have understood that he or she was not free to leave." This definition, however, fails to recognize the distinction between "seizure" and "arrest," discussed above. A person may be seized without being placed under custodial arrest. None of the cases cited by the dissent deal with this precise issue. While we agree that the "reasonable person" standard is a factor in determining whether an arrest has occurred, just as it would be for any seizure, we believe more is required to establish a custodial arrest for purposes of a search incident to an arrest.

10

officers did not take the appellee into custody until several hours later when he was first released from the medical center.

Giving deference to the trial court's findings of fact, we agree with the trial court's ultimate conclusion that the appellee was not under arrest at the time of the search.  The evidence reflects that the appellee was kept at the accident scene for only a few minutes while waiting on the arrival of an ambulance.  Without more, there is no showing that the appellee was being detained by police for any reason other than medical treatment.

If law enforcement officers intend to justify a search as incident to an arrest, it is incumbent upon them to take some action that would indicate to a reasonable person that he or she is under arrest.[11]  Although formal words of arrest are not required, see 5 Am. Jur. 2d *Arrest* § 2 (1995), some words or actions should be used that make it clear to the arrestee that he or she is under the control and legal authority of the arresting officer, and not free to leave.  In this case, actions that would have accomplished this included, but were not limited to, accompanying the appellee to the hospital until the arrest warrant could be obtained and served, telling the appellee that he should consider himself in custody pending actual service of the arrest warrant, or any other words or actions that would have conveyed the same message.

## CONCLUSION

It is axiomatic that a warrantless police search may not precede an arrest and serve as part of its justification.  Smith v. Ohio, 494 U.S. 541, 543, 110 S.Ct. 1288,

---

[11]The State originally tried to justify the search of the motorcycle and its contents as an inventory search.  It was only after it became apparent that this argument would fail under the principles of Drinkard v. State, 584 S.W.2d at 653-54, (because of the offer by appellee's friend Jeff Crook to take control of the motorcycle) that the State tried to justify this search as "incident to arrest."  It is clear that Officer Moniz did not believe he had arrested the appellee.

11

1290, 108 L.Ed.2d 464 (1990) (per curiam); <u>Sibron v. New York</u>, 392 U.S. 40, 63, 88

S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Moreover, we are not prepared to hold that

the police may conduct a warrantless search merely because they have probable

cause to arrest the suspect. Having determined that the appellee was not under

arrest at the time of the search, we conclude that the search was not incident to a

lawful arrest.[12]


The judgment of the Court of Criminal Appeals is affirmed with costs taxed to

the State of Tennessee.


_____
WILLIAM M. BARKER, JUSTICE


CONCUR:

Anderson, C.J.,
Birch, J.


DISSENT:

Drowota, Holder, JJ.

---

[12]The "search incident to arrest" exception from <u>Chimel</u> is based upon the need to protect police officers and to preserve evidence at the time of arrest. The dissent relies on the Supreme Court's later decision in <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980), to argue that a search may be upheld under <u>Chimel</u> where it occurs before the arrest. We do not read <u>Rawlings</u> to broaden the scope of searches incident to lawful arrests. In <u>Rawlings</u>, the police arrested the suspect immediately after, and contemporaneous to, the search of his person. The Supreme Court upheld the search as incident to arrest based upon the circumstances in that case. 448 U.S. at 111, 100 S.Ct. at 2564. In appellee's case, the police did not take custody of the appellee until several hours after the search, when the appellee was first released from the medical center. Moreover, the formal arrest was not made until approximately four days later. The search exceeded the scope and rationale of <u>Chimel</u>.